# CHARLESTON.

## WOOD *et al v.* CITY OF HINTON.

### Submitted January 24, 1900.—Decided March 31, 1900.

1. ACTION AGAINST CITY—*Allegations.*

   A declaration filed against a municipal corporation in an action on the case, which avers that the common council authorized the plaintiff to erect a carpenter shop on a certain lot within such municipality, with the knowledge that a steam engine would be necessary in running the machinery connected with such shop, and that after the erection of such shop the council modified such permit so as to forbid the

use of such steam engine therein, to the great damage and loss of the plaintiff, states no sufficient cause of action against such municipality.    (p. 648).

2.  ABATEMENT OF NUISANCE—*Damages.*
The power of the common council of a city, town, or village to prevent or abate nuisances is governmental and discretionary, and for the proper exercise thereof the city cannot be held liable for the loss or destruction of property or damages occasioned thereby.    Such loss, if any, must fall upon the actual or proposed nuisancer.    (p. 648).

Error to Circuit Court, Summers County.

Action by D. C. Wood & Co. against the city of Hinton. Judgment for plaintiffs, and defendant brings error.

*Reversed.*

MILLER & READ, for plaintiff in error.

VINSON & THOMPSON, for defendants in error.

DENT, JUDGE:

D. C. Wood & Co., plaintiffs, sued the city of Hinton, defendant, in the circuit court of Summers County, and recovered a judgment for $——.   Defendant obtained a writ of error.   The whole questioned involved rises on the demurrer to the declaration which is as follows: "State of West Virginia, County of Summers—ss.:   In the circuit court thereof.   D. C. Wood and W. H. Griffith, partners in trade under the firm name and style of D. C. Wood & Co., complain of the city of Hinton, a municipal corporation duly organized and existing under the laws of the State of West Virginia, of a plea of trespass on the case, for that theretofore, to wit, on the —— day of ———, 1897, at the time of the damage and injury to the said plaintiffs as hereinafter mentioned, in the city of Hinton as aforesaid, the plaintiffs applied to the common council of the said city of Hinton, then and there assembled for the purpose of transacting business for the said city of Hinton, for permission to erect a carpenter shop on a certain lot in said city (said lot being on Third avenue, and known as the 'Saul Lot'); and the said common council, well knowing of what the said carpenter shop consisted, and how the same was to be operated, granted the plaintiffs the privilege to erect said

carpenter shop upon the said lot, within the corporate limits of said city.   The plaintiffs, acting in good faith and in accordance to the provisions in said permit, leased the lot mentioned as aforesaid for a period of five years, paying therefor a large sum of money, to wit, three hundred dollars, and, still acting in accordance to said permit, the plaintiffs proceeded to tear down the building in which said carpenter shop was located, and to move said building and shop, and all tools and fixtures thereto be'onging, a great distance, and at a great cost, to wit, three hundred dollars, and the plaintiffs began to erect their shop, complying with the terms of the said permit granted by the said common council; and after they had gotten the said building well-nigh completion, and had expended a great deal of labor and a large sum of money, to wit, five hundred dollars, in the purchase of material and the hire of labor for the construction of the said building on the lot aforesaid, to wit, the Saul lot, the said common council for the city of Hinton, without notice to the plaintiffs, convened a meeting, and at said meeting the said common council revoked or so changed the said permit as to prevent the said plaintiffs from putting in the machinery and appliances necessary to run said carpenter shop, and on the ——— day of ———, 1897, the chief of police for the city aforesaid served a notice on the plaintiffs not to put in said shop any steam engine, thereby rendering the said shop entirely worthless to the plaintiffs; the said defendant well knowing at the time the permit aforesaid was granted that, in order to operate the machinery which was necessary to carry on their business aforesaid, it was necessary for them to employ a steam engine, in order to operate their machinery aforesaid.   And by reason of the order revoking and changing said permit, and the notice served by the chief of police aforesaid, the machinery, tools, appliances, and steam engine were greatly damaged, impaired, and rendered worthless, by reason of the plaintiffs' inability to procure proper place to store the same, to the amount of two hundred dollars.   And by reason of the premises aforesaid, to wit, the revocation of the order or permit for the erection of the building aforesaid, plaintiffs were hindered, delayed, and prevented from carrying on their usual

business and avocation for a long space of time, to wit, for the space of ——— months, by reason of which they sustained great injury and loss, to wit, to the amount of seven hundred dollars, by reason of the allegations aforesaid, and the premises aforesaid, all of which were well known to the defendant. Wherefore, by means of the premises, and of the wrong, grievances, and injuries hereinbefore mentioned, said plaintiffs have sustained damages to the amount of two thousand dollars. Therefore they sue. Lively, Thompson & Lively, and J. S. Thompson, P. Q.''

This declaration states no cause of action against the city of Hinton, whatever. The city of Hinton, as a branch of the State government, cannot be held liable in a suit for damages for any act done by its officers in discharge of, or attempting to discharge, its governmental powers. Among these, as provided in the statute, is the power to prevent injury or annoyance to the public or individuals from anything dangerous, offensive, or unwholesome; to abate or cause to be abated anything which, in the opinion of the majority of the whole council, shall be a nuisance; to regulate the keeping of gunpowder and other combustibles. None of these are what are called positive or administrative powers, but they are all purely governmental and discretionary. The refusal of the town authorities to permit the use of a steam engine in the building complained of is probably because of its being a nuisance, either from fire, smoke, or noise, or all combined. Whether it was so or not, that was a matter for the council to determine; and, it having so determined, its action is final, unless annulled by proper judicial proceedings. This right of the council seems to be conceded, but the complaint is that the council first gave permission, and then, after it had been acted upon by the plaintiffs at large expense, it revoked the authority to use a steam engine, and thereby cause the plaintiffs loss and damages. If the council is wrong in the course it pursued, the town is in no sense liable. Even after the works were fully erected and in operation the town would have had the right to abate them, if they proved o be a nuisance to the public or individuals. This belongs to its governmental and public powers. Every person engaged in a business that may become a nuisance must take

notice of the law in this respect, although permitted to do so in the beginning by public authority. This is a risk assumed when such business is engaged in by such person. It is beyond the power of the town council to contract away the authority to prevent or abate nuisances, and, if they should do so, their acts are *ultra vires* null and void, and the town is not bound thereby, nor made liable to damages by reason of a breach of such void contract. *Parkersburg Gas Co.* v. *City of Parkersburg*, 30 W. Va. 435, (4 S. E. 650); *Spilman* v. *City of Parkersburg*, 35 W. Va. 605, (14 S. E. 279). It is not averred in the declaration that the act complained of was wrongful or illegal, and, if not, the town could not, certainly, be liable for the lawful acts of any of its authorities. If either the granting the permit in the first instance, or revoking it in the second, was an unlawful assumption of authority, which is not averred in the declaration, the town could not be held liable for damages consequent thereon or arising therefrom. It has been repeatedly held that, "as to the powers and functions of an incorporated town of a public governmental character, it is not liable for damages caused by the wrongful acts of negligence of its officers or agents therein." *Bartlett* v. *Town of Clarksburg*, 45 W. Va. 393, (31 S. E. 918), 43 L. R. A. 295; *Thomas* v. *Town of Grafton*, 34 W. Va. 282, (12 S. E. 478); *Brown's Adm'r* v. *Town of Guyandotte*, 34 W. Va. 299, (12 S. E. 707), 11 L. R. A. 121; *Mendel* v. *City of Wheeling*, 28 W. Va. 233. If the act complained of was a lawful exercise of power, which appears to be admitted in the declaration, the town could not be held liable, although injurious to the individual. Such injuries always are the result of the prevention or abatement of nuisances, and yet they must be prevented or abated by the police power; and the nuisancer must bear the loss occasioned thereby, even to the expense of abatement. *Baumgartner* v. *Hasty*, 100 Ind. 575; *Meeker* v. *Van Rensselaer*, 15 Wend. 397. From this it is plain the plaintiff showed no cause of action against the defendant. The judgment is reversed, the demurrer to the declaration sustained, and the suit dismissed.

*Reversed.*