# CHARLESTON.

PARKER *v.* CITY OF FAIRMONT.

Submitted June 11, 1912.   Decided September 23, 1913.

1. MUNICIPAL CORPORATIONS—*Powers—Abatement of Nuisance.*

    Under the provision of the charter of the city of Fairmont, same as Code, ch. 47, sec. 28, that "the council shall have power to abate or cause to be abated anything which, in the opinion of a majority of the whole council, shall be a nuisance," the council may abate only that as a nuisance which is recognized as such *per se*, or branded as such by lawful statute or ordinance.   (p. 689).

2. SAME.

    The production and emission of smoke from the plant of a lawful business can not be abated by the city of Fairmont under its mere charter powers to abate nuisances and to prevent injury and annoyance, in the absence of a reasonable ordinance, applicable alike to all of a class, making such production and emission unlawful.   (p. 689).

3. INJUNCTION—*Grounds—Municipal Corporations—Abatement of Nuisance.*

    Equity will restrain a municipal corporation from proceeding under illegal and invalid order or resolution to remove an alleged nuisance, where private rights are unlawfully encroached upon and irreparable injury will ensue.   (p. 692).

Appeal from Circuit Court, Marion County.

Bill by Richard F. Parker against the City of Fairmont. From a decree for defendant, plaintiff appeals.

*Reversed.*

*Harry Shaw* and *French McCray,* and *Chas. E. Hogg,* for appellant.

*Walter R. Haggerty* and *Tusca Morris,* for appellee.

ROBINSON, JUDGE:

Parker was summoned before the municipal council of the city of Fairmont to show cause why his dye works, located in a residence section of that city, should not be declared a nuisance by reason of the coal smoke and soot produced and emitted therefrom. Upon a hearing of the matter the dye works was declared to be such a nuisance and the mayor was ordered to proceed to abate the same. Thereupon Parker by this suit sought to enjoin the city authorities from proceeding further toward interfering with his business, on the ground that the proposed interference was without warrant of law and would irreparably damage him. He obtained a preliminary injunction, but upon a hearing the same was dissolved and his bill dismissed. From the decree in the premises he has appealed.

The city authorities claim power to make the order which they did under the provisions of the city charter and an ordinance of the city, which are as follows: "The council shall have power within the said city * * * to prevent injury or annoyance to the public or individuals from anything dangerous, offensive or unwholesome; * * * to abate or cause to be abated anything which, in the opinion of a majority of the whole council, shall be a nuisance." Acts 1899, ch. 11. "Whenever any out-house, privy, hog-pen, stable or other building within said City shall be by a majority of the whole council declared a nuisance or injurious to the health or comfort of any person or persons, the owner, agent, or lessee of the property shall be notified by the mayor to abate the nuisance by removal or keeping in proper order such building and in case of refusal or neglect to comply with such notice, the mayor shall direct the proper officer of the

city to have the same put in order or removed and report his proceeding and costs incurred by him to the mayor," etc. Municipal Code of the City of Fairmont, ch. 27, sec. 36.

Plaintiff's business—his use of the premises—is not *per se* a nuisance. It is a lawful one. The provisions which we have quoted do not brand it as unlawful. Those provisions do not forbid smoke and soot from being produced and emitted. It would seem that under the charter power "to prevent injury or annoyance to the public or individuals from anything dangerous, offensive or unwholesome," the city authorities could make a just and reasonable regulation as to the production and emission of smoke and soot, applicable to all alike of the same class and not merely directed toward the property and business of one person. But we find no power in the city to strike directly at plaintiff alone. Plainly the ordinance quoted as relied upon does not apply to the production and emission of smoke and soot. It is an ordinance most apparently directed wholly against buildings of a very distinct class. Nor can the granted power "to abate or cause to be abated anything which, in the opinion of a majority of the whole council shall be a nuisance," be properly viewed as authorizing the council to single out and condemn as to any sole individual that which is ordinarily lawful. That provision can not rightly be construed to mean that the council may determine that to be a nuisance which is not such by the common law, by statute, or by ordinance. It gives power to abate nuisances, not to determine what shall be considered nuisances. It plainly relates to nuisances *per se,* those primarily branded as such by the law. Dillon on Municipal Corporations, 5th edition, sections 690, 694; *St. Paul* v. *Gilfillan,* 36 Minn. 298. The charter provision grants a police power of abatement; not an arbitrary power of determining that something is a nuisance which by no law is known to be such. It is not reasonable to presume that the Legislature meant to grant such arbitrary power to the municipal authorities. True, the opinion of the majority of the whole council is called for by the provision. But that opinion is to be applied in discerning that the thing complained of comes within the category of nuisances pronounced to be such by law. Clearly the power granted is to abate what the

law holds to be a nuisance, not to enact that any particular thing is a nuisance. In this view we are confirmed by the forceful writing of JUDGE DENT in *Davis* v. *Town of Davis*, 40 W. Va. 474.

Such a power as is claimed by the city herein can not be upheld. The municipal authorities of Fairmont may, by the power in the city charter, abate *per se* nuisances; or under other powers granted by the charter it may pass reasonable ordinances preventing injury or annoyance to the citizens. All that is quite different from arbitrarily singling out a lawful business of one individual and making a law applicable to him alone, which is the substance of the city's action as to the plaintiff herein. The council must proceed under established law, not under arbitrary rule. It must ordain and publish law which relates to all alike that are similarly situated, and then enforce the same. It can not make the law and enforce it at the same time in individual cases. Such a power, it is said generally, can not be tolerated. *Lake* v. *City of Aberdeen*, 57 Miss. 260. It may be that the smoke and soot from plaintiff's dye works should be abated; but the city of Fairmont has not power to proceed simply against that smoke and soot. It must proceed uniformly as to that and all other similarly produced and emitted smoke and soot. Recognition and adherence to this rule is worth more indeed than any good that might come to the citizens complaining of plaintiff's dye works in this particular case. Only the even administration of the law produces ultimate public good. It is dangerous ever to ignore the principle, or to open the door for its disregard. Mr. Justice Miller, in *Yates* v. *Milwaukee*, 10 Wall. 497, said: "It is a doctrine not to be tolerated in this country, that a municipal corporation, without any general laws either of the city or of the State, within which a given structure can be shown to be a nuisance, can, by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself. This would place every house, every business, and all the property of the city, at the uncontrolled will of the temporary local authorities." It seems unnecessary to cite authorities for this principle. Reason impresses it. The books abound in its justification.

. We are firmly of the opinion that, though the city of Fairmont had the power to enact laws regulating the production and emission of smoke and soot, at the time of the procedure against plaintiff's business neither the city charter nor any ordinance passed in pursuance thereof warranted the order to abate that business as a nuisance.

What was plaintiff's remedy to prevent the city's unwarranted interference with his lawful business, or use of the premises? Clearly, that which he chose, injunction. That the threatened invasion of plaintiff's private rights under the illegal and invalid resolution of the council, if allowed to be carried out, would affect the very substance of plaintiff's estate and produce irreparable damage is boldly apparent from the nature and circumstances of the case. That plaintiff has no adequate remedy at law is equally clear. The case comes plainly within the rule allowing equity cognizance. "Injunction will lie to restrain proceedings of a municipal corporation to remove an alleged nuisance where private rights are encroached upon and irreparable injury will ensue." Smith on Municipal Corporations, section 1629; High on Injunctions, section 1243; 118 Amer. St. Rep. 376; *Bristol Door & Lumber Co.* v. *City of Bristol,* 97 Va. 304.

As to the public, represented by the municipal authorities, plaintiff's use of his premises is not shown to be a nuisance. We repeat, that use is ordinarily lawful, and in behalf of the public it has not been branded as unlawful by an enactment within the power of the city. This being true, the city by its answer in the cause can not justify its act against plaintiff. It can not say merely by its answer that the use is in fact a nuisance. It must first say that by general and uniform ordinance. Of course plaintiff's use may be a private nuisance of which some individual may complain in equity regardless of city ordinance. But we have only the question of the right of the city to complain.

The decree is erroneous. It will be reversed. The court should not have dissolved the injunction but perpetuated it. That which the circuit court should have done will now be done here.

*Reversed.*