334 S.E.2d 616

**SHARON STEEL CORPORATION**

v.

**CITY OF FAIRMONT, et als.**

No. 16349.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 30, 1985.

Decided June 3, 1985.

Rehearing Denied July 10, 1985.

Hays Webb & Alfred J. Lemley, Furbee, Amos, Webb & Critchfield, Fairmont, Blair S. McMillin, Robert W. Thomson, Edward A. Bittner, Jr., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellant.

George R. Higinbotham, Fairmont, Patrick C. McGinley, Morgantown, for appellees.

MILLER, Justice:

Sharon Steel Corporation brought a declaratory action against the City of Fairmont challenging the legality of its Ordinance No. 597, which prohibits the permanent disposal of hazardous wastes in the City as a public nuisance. The Circuit Court of Marion County upheld the ordinance. Sharon Steel argues that the ordinance should be invalidated for several reasons. First, because of the extensive federal and State regulation of hazardous wastes under the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901–6987 (RCRA) [1] and the West Virginia Hazardous Waste Management Act, W.Va.Code, 20–5E–1 through –23 (WVHWMA), the City is pre-empted from enacting local legislation on the subject. Second, the City lacks the authority to pass such an ordinance. Finally, the ordinance is in violation of substantive due process principles. We affirm the circuit court for the reasons hereinafter set out.

Sharon Steel operated a coking plant in the City of Fairmont from 1948 until 1979. During that time, the plant generated hazardous wastes as a by-product of its operations. After closing the coking plant, Sharon Steel sought to construct a permanent hazardous waste containment facility at the same location to dispose of the hazardous waste by-products that had accumulated. Sharon Steel has applied for the necessary federal and State permits for the construction of such a facility, but as of the time of this appeal, these permits have not yet been acquired or approved.

In June of 1983, Fairmont passed its Ordinance No. 597, which is the focal point of the controversy in this case.[2] The key

---

1. The Solid Waste Disposal Act was amended in 1976 by the RCRA, which, among other changes, provided for hazardous waste management.

2. The full text of Ordinance No. 597 is:

"WHEREAS, West Virginia Code § 8–12–5 given plenary power and authority for municipalities to control and administer waterfronts and waterways; to prohibit the accumulation and require the disposal of garbage, refuse, waste, ashes, trash and other similar matters; to prevent injury or annoyance to the public or individuals from anything dangerous, offensive or unwholesome; to project and promote the public morals, safety, health, welfare and good order; to provide for the elimination of hazards to public health and safety and to abate or cause to be abated anything which in the opinion of a majority of the governing body is a public nuisance; and

"WHEREAS, The City Council finds that permanent disposal of hazardous wastes within the City is a nuisance in that it may depreciate property values; have an adverse impact on the City's ability to attract new business and industry and encourage expansion of existing business and industry; create a continuing serious anxiety and concern among city residents and visitors concerning the existence of a permanent hazardous waste disposal site within the city, all of which are offensive and constitute injury and annoyance to the public and individuals; and

"WHEREAS, the City Council finds that prohibition of the permanent disposal of hazardous waste will protect and promote the public morals, safety, health, welfare and good order in the City;

"NOW THEREFORE THE CITY OF FAIRMONT HEREBY ORDAINS THAT:

"SECTION 1. DEFINITIONS:

'Permanent Disposal' or 'Permanently Dispose' means the discharge, deposit, injection, dumping, spilling, leaking or placement of any hazardous waste into, on, above, or below any land or water which waste is to remain or which has remained at a disposal site within the City for a continuous period of five years

portion of the ordinance is Section 2, which states the type of activity that Fairmont seeks to prohibit: "It shall be unlawful for any person to permanently dispose or attempt to permanently dispose of hazardous waste within the City. Provided, however, that storage of hazardous wastes by duly licensed and taxpaying enterprises shall not be prohibited." The term "storage" is defined in Section 1 to mean "local containment of hazardous wastes which wastes are not intended to be permanently disposed of at any site within the City." Thus, Section 2 indicates that the ordinance allows the temporary storage of hazardous wastes by "duly licensed and taxpaying enterprises." It is only the permanent disposal of hazardous wastes that the ordinance seeks to prohibit.

The term "waste" is defined in Section 1 to be "garbage, refuse, sludge, and other discarded material including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial mining and agricultural operations." The term "hazardous waste" parallels the definition of hazardous waste found in both the federal and State acts.[3] The only difference is that the ordinance definition does not adopt the ending phrase "when improperly treated, stored, transported" used in the federal and State acts, but simply concludes with the words "when stored."

The thrust of the ordinance is directed at prohibiting the permanent storage of hazardous wastes which are improperly stored in the sense that the wastes may "cause, or significantly contribute to an increase in mortality, or [serious] illness ... or pose a substantial present or potential hazard to human health or the environment when stored." Ordinance No. 597, Sections 1 and 2.

and which is not intended to be removed from such site.

" 'Hazardous Waste' means a waste or combination of wastes, which because of its quantity, concentration or physical, chemical or infectious characteristics, may cause, or significantly contribute to an increase in mortality, or an increase in serious irreversible, or incapacitating reversible illness, or pose a substantial present or potential hazard to human health or the environment when stored. Provided, however, that hazardous wastes shall include only those whose disposal would require a state or federal hazardous waste permit.

" 'Person' means any individual, trust, firm, joint stock company, public or private or governmental corporation, partnership, association, state or federal agency.

" 'Storage' means the otherwise local containment of hazardous wastes which wastes are not intended to be permanently disposed of at any site within the City.

" 'Waste' means any garbage, refuse, sludge, and other discarded material including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial mining and agricultural operations, but does not include solid or dissolved material in domestic sewage.

"SECTION 2. PROHIBITION: It shall be unlawful for any person to permanently dispose or attempt to permanently dispose of hazardous waste within the City. Provided, however, that storage of hazardous wastes by duly licensed and taxpaying enterprises shall not be prohibited.

"SECTION 3. NUISANCE: In the event any person shall dispose or establish a site for the permanent disposal of hazardous waste in violation of the provisions of this Ordinance, the City Attorney is authorized, upon instructions from the City Manager, in addition to other penalties set forth herein, to institute any appropriate civil action or proceedings to prevent such disposal of hazardous waste, the same being deemed a public nuisance.

"SECTION 4. PENALTIES: Any person who shall violate a provision of this Ordinance or fail to comply with any of the requirements hereof shall be guilty of a misdemeanor, punishable by a fine of not more than Five Hundred Dollars, or by imprisonment not exceeding thirty days, or both fine and imprisonment. Each day that a violation continues or has not been totally abated shall be deemed a separate offense.

"This Ordinance shall become effective not sooner than thirty (30) days after adoption."

3. The definition of "hazardous waste" found in W.Va.Code, 20–5E–3(6), is identical to that found in the RCRA, 42 U.S.C. § 6903(5), and is as follows:

" 'Hazardous waste' means a waste or combination of wastes, which because of its quantity, concentration or physical, chemical or infectious characteristics, may (A) cause, or significantly contribute to, an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, disposed of or otherwise managed."

The RCRA and the WVHWMA are primarily regulatory in nature and are designed to prevent improper treatment, storage, transportation, and disposal of hazardous wastes. They proceed on the theory that the technology exists to properly treat hazardous wastes so that they will not cause substantial harm to human health or the environment.

The City's ordinance is not regulatory. It is a penal ordinance directed at persons who improperly permanently store hazardous wastes which endanger human health or the environment. This conclusion is evident from the definitions in Section 1, the prohibition in Section 2, the nuisance provision in Section 3, and the penalty provision in Section 4. The net effect of the ordinance is to define a public nuisance condition involving hazardous wastes.

Through the enactment of this ordinance, the City is attempting to abate what it considers to be a public nuisance. In *Hark v. Mountain Fork Lumber Co.*, 127 W.Va. 586, 595–96, 34 S.E.2d 348, 354 (1945), we gave the following general definition of public nuisance:

> "A public nuisance is an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons. The distinction between a public nuisance and a private nuisance is that the former affects the general public, and the latter injures one person or a limited number of persons only. Ordinarily, a suit to abate a public nuisance cannot be maintained by an individual in his private capacity, as it is the duty of the proper public officials to vindicate the rights of the public."

*See also* W. Prosser and W. Keeton, The Law of Torts § 90 (5th ed. 1984); W. Rodgers, Jr., Handbook on Environmental Law § 2.2 (1977); Restatement (Second) of Torts § 821B (1979); 58 Am.Jur.2d *Nuisances* § 7 (1971).

In *Martin v. Williams*, 141 W.Va. 595, 610–11, 93 S.E.2d 835, 844, 56 A.L.R.2d 756, 768 (1956), we generally described what may constitute a nuisance:

> "A nuisance is anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable.... A nuisance is anything which interferes with the rights of a citizen, either in person, property, the enjoyment of his property, or his comfort.... A condition is a nuisance when it clearly appears that enjoyment of property is materially lessened, and physical comfort of persons in their homes is materially interfered with thereby.... When the prosecution of a business, of itself lawful, in a strictly residential district, impairs the enjoyment of homes in the neighborhood, and infringes upon the well-being, comfort, repose, and enjoyment of the ordinary normal individual residing therein, the carrying on of such business in such locality becomes a nuisance, and may be enjoined." (Citations omitted).

As suggested by this broad definition, nuisance is a flexible area of the law that is adaptable to a wide variety of factual situations. We have decided nuisance cases involving land being used for rock concerts, *Berkeley County Comm'n v. Shiley*, 170 W.Va. 684, 295 S.E.2d 924 (1982), a school site near an airport, *Sticklen v. Kittle*, 168 W.Va. 147, 287 S.E.2d 148 (1981), dust created by coal trucks, *West v. National Mines Corp.*, 168 W.Va. 578, 285 S.E.2d 670, 25 A.L.R.4th 1179 (1981), an automobile junk yard, *Mahoney v. Walter*, 157 W.Va. 882, 205 S.E.2d 692 (1974), a used car lot, *Martin v. Williams, supra*, a rail tramroad built on a public road, *Hark v. Mountain Fork Lumber Co., supra*, a house of prostitution, *State v. Navy*, 123 W.Va. 722, 17 S.E.2d 626 (1941), an automobile garage built out of inflammable materials, *Harris v. Poulton*, 99 W.Va. 20, 127 S.E. 647, 40 A.L.R. 334 (1925), fences, *Donohoe v. Fredlock*, 72 W.Va. 712, 79 S.E. 736 (1913), coal smoke and soot emitted by a dye works plant, *Parker v. City of Fairmont*, 72 W.Va. 688, 79 S.E. 660 (1913), a carpenter shop with a steam engine, *Wood v. City of Hinton*, 47 W.Va. 645, 35 S.E. 824 (1900), damage to property adjacent to a railroad track, *Guinn v. Ohio River R.R. Co.*, 46 W.Va. 151, 33 S.E. 87 (1899), a merry-go-round, *Town of Davis v. Davis*, 40 W.Va. 464, 21 S.E. 906 (1895), an explo-

sives factory, *Wilson v. Phoenix Powder Mfg. Co.*, 40 W.Va. 413, 21 S.E. 1035 (1895), a house built partially on city property, *Teass v. City of St. Albans*, 38 W.Va. 1, 17 S.E. 400 (1893), noise from a factory, *Powell v. Bentley & Gerwig Furniture Co.*, 34 W.Va. 804, 12 S.E. 1085 (1891), and an obstruction of a public road, *Keystone Bridge Co. v. Summers*, 13 W.Va. 476 (1878).

Nuisance law has been particularly effective in addressing environmental problems. In W. Rodgers, Jr., Handbook on Environmental Law § 2.1 at 100 (1977), the following statement is made:

> "There is simply no common law doctrine that approaches nuisance in comprehensiveness or detail as a regulator of land use and of technological abuse. Nuisance actions have involved pollution of all physical media—air, water, land—by a wide variety of means.... Nuisance actions have challenged virtually every major industrial and municipal activity which is today the subject of comprehensive environmental regulation—the operation of land fills, incinerators, sewage treatment facilities, activities at chemical plants, aluminum, lead and copper smelters, oil refineries, pulp mills, rendering plants, quarries and mines, textile mills and a host of other manufacturing activities.... Nuisance theory and case law is the common law backbone of modern environmental and energy law."[4]

Having determined that the ordinance is directed at abating a public nuisance condition, rather than a regulatory ordinance designed to deal with the management and control over the disposal of hazardous wastes, we will now address the specific objections made by Sharon Steel against the ordinance's validity.

## I.

An assertion of federal pre-emption is a claim easily made but difficult to apply in a given case because of the enormous variety of legislative overlap that occurs between federal, state, and local enactments.[5] In this case, Sharon Steel does not argue that the federal RCRA pre-empts our WVHWMA.[6]

---

**4.** A number of articles discuss the possible application of nuisance law to hazardous wastes and the problem of selecting appropriate sites for hazardous waste disposal facilities. *See, e.g.*, Duffy, *State Hazardous Waste Facility Siting: Easing the Process Through Local Cooperation and Preemption*, 11 B.C. Envtl. Aff.L.Rev. 755 (1984); Harrington, *The Right to a Decent Burial: Hazardous Waste and its Regulation in Wisconsin*, 66 Marq.L.Rev. 223 (1983); Tarlock, *Anywhere But Here: An Introduction to State Control of Hazardous-Waste Facility Location*, 14 Land Use & Env't L.Rev. 533 (1983); Trauberman, *Common Law Nuisance in Hazardous Waste Litigation: Has it Survived Milwaukee II?*, 13 Envtl.L.Rep. 10043 (1983); Comment, *Hazardous Waste Liability and Compensation: Old Solutions, New Solutions, No Solutions*, 14 Conn. L.Rev. 307 (1982); Comment, *Hazardous Waste Cleanup in Wyoming: Legal Tools Available to the Private Citizen*, 19 Land & Water L.Rev. 395 (1984); Comment, *Changes in the Ownership of Hazardous Waste Disposal Sites: Original and Successor Liability*, 67 Marq.L.Rev. 691 (1984); Comment, *Remedies for Hazardous Waste Injuries*, 11 N.Ky.L.Rev. 435 (1984); *Utah's Hazardous Waste Facility Siting Act: Burying Private and Local Interests to Facilitate Siting?*, 1983 Utah L.Rev. 327.

For an example of a case where an action based on nuisance was successfully prosecuted against an operator of a hazardous waste facili-

ty, see *Village of Wilsonville v. SCA Services, Inc.*, 86 Ill.2d 1, 55 Ill.Dec. 499, 426 N.E.2d 824 (1981).

**5.** In *Michigan Canners & Freezers Ass'n, Inc. v. Agricultural Marketing & Bargaining Bd.*, 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399, 406 (1984), this summary of federal pre-emption principles is made:

> "Federal law may pre-empt state law in any of three ways. First, in enacting the federal law, Congress may explicitly define the extent to which it intends to pre-empt state law.... Second, even in the absence of express pre-emptive language, Congress may indicate an intent to occupy an entire field of regulation, in which case the States must leave all regulatory activity in that area to the Federal Government.... Finally, if Congress has not displaced state regulation entirely, it may nonetheless pre-empt state law to the extent that the state law actually conflicts with federal law. Such a conflict arises when compliance with both state and federal law is impossible ... or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " (Citations omitted).

**6.** Under 42 U.S.C. § 6926, states are permitted to adopt a hazardous waste program which, when it meets the federal standards, operates in

We decline to make any detailed discussion of the federal pre-emption doctrine in this case because we find that both the RCRA and our WVHWMA do not conflict with and therefore do not pre-empt the City's ordinance. Both acts have similarly worded savings clauses, 42 U.S.C. § 6972(f),[7] and W.Va.Code, 20–5E–18(d), which state that nothing in the acts shall restrict any right any person may have under any statute or common law to seek enforcement of any standard or requirement relating to hazardous wastes or to seek any other relief. Furthermore, W.Va. Code, 20–5E–18(h),[8] preserves the right of any person to bring an action based on nuisance.

These provisions indicate that Congress and our State legislature intended to preserve the rights of any person to file an action relating to hazardous wastes based on either statutory or common law grounds. The United States Supreme Court, in interpreting similar savings clauses in other federal environmental acts, has held that such provisions do not preserve the right to bring an action based upon federal common law, but has indicated that actions based upon other statutes or state common law would be preserved. *See Mid-*

*dlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 20 n. 31, 101 S.Ct. 2615, 2626–27 n. 31, 69 L.Ed.2d 435, 451 n. 31 (1981); *City of Milwaukee v. Illinois,* 451 U.S. 304, 327–29, 101 S.Ct. 1784, 1797–99, 68 L.Ed.2d 114, 132–34 (1981).

We have found only a few cases addressing the issue of whether an action based upon a state's common law of nuisance can be maintained without being pre-empted by the RCRA. In *Environmental Defense Fund, Inc. v. Lamphier,* 714 F.2d 331, 337 (4th Cir.1983), where State agencies and citizens sought to enjoin the continued operation of an industrial waste disposal facility on a nuisance theory, the Fourth Circuit held:

> "Under the citizen suit provision of RCRA, 42 U.S.C. § 6972, the district court is authorized to enforce RCRA regulations or orders, presumably to the full extent of its legal and equitable powers. 42 U.S.C. § 6972(a). Provided plaintiffs are genuinely acting as private attorneys general rather than pursuing a private remedy, nothing in RCRA ... bars injunctive relief. *See* 42 U.S.C. § 6928." (Footnote omitted).[9]

---

lieu of the RCRA. In *Stablex Corp. v. Town of Hooksett,* 122 N.H. 1091, 1096–97, 456 A.2d 94, 97 (1982), the court recognized this fact and quoted from House committee reports indicating that the congressional intent was to permit a state to take over the hazardous waste program:

"For example, a House committee report on the RCRA states:

'It is the Committee's intention that the States are to have primary enforcement authority and if at anytime a State wishes to take over the hazardous waste program it is permitted to do so, provided that the State laws meet the Federal minimum requirements for both administering and enforcing the law.'
H.R.Rep. No. 94–1491, 94th Cong., 2d Sess. 24, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6238, 6262."

7. 42 U.S.C. § 6972(f) provides:

"Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any standard or requirement relating to the management of solid waste or hazardous waste, or to seek any

other relief (including relief against the Administrator or a State agency)."

8. W.Va.Code, 20–5E–18(h), provides:

"Notwithstanding any provision of this article to the contrary, any person may maintain an action to enjoin a nuisance against any permit holder or other person subject to the provisions of this article and may seek damages in said action, all to the same extent and for all intents and purposes as if this article were not enacted if such person maintaining such action and seeking such damages would otherwise have standing to maintain such action and be entitled to damages by any other rule of law."
*See also* W.Va.Code, 20–5E–10 (Facilities in existence at the time WVHWMA became effective that would now be required to have a permit shall operate "in such a manner as will not cause or create a substantial risk of a health hazard or a public nuisance or a significant adverse effect upon the environment.").

9. It should be noted that 42 U.S.C. § 6972(a) specifically enables citizens to seek enforcement of the RCRA after giving the government notice to first proceed to correct the condition.

The court also rejected the contention that the state's hazardous waste act had pre-empted an action based upon the state's common law of nuisance.

In *Neal v. Darby,* 282 S.C. 277, 318 S.E.2d 18 (App.1984), the challenged chemical company conceded that neither the RCRA nor the state's hazardous waste management act pre-empted an action based on nuisance. *See also State v. Schenectady Chemicals, Inc.,* 103 A.D.2d 33, 479 N.Y.S.2d 1010 (1984) (State common law nuisance action against chemical company responsible for disposing of chemical wastes held not pre-empted by federal environmental legislation); *State v. Monarch Chemicals, Inc.,* 90 A.D.2d 907, 456 N.Y.S.2d 867 (1982) (State common law nuisance action to abate soil and water contamination held not pre-empted by federal legislation, including RCRA); *cf. Krueger v. Mitchell,* 112 Wis.2d 88, 332 N.W.2d 733 (1983) (State common law nuisance action against noise created by airport held preserved by savings clause in federal legislation).

The present situation is somewhat analogous to *Exxon Corp. v. Eagerton,* 462 U.S. 176, 103 S.Ct. 2296, 76 L.Ed.2d 497 (1983), where the United States Supreme Court addressed the question of whether the Natural Gas Pricing Act (NGPA) pre-empted an Alabama statute which prohibited oil and gas producers from passing on severance tax increases to their customers. The United States Supreme Court concluded that the NGPA pre-empted the pass-through provision on sales of gas in interstate commerce. However, after analyzing the NGPA and particularly Section 602(a), 15 U.S.C. § 3432(a), which allows states to set lower prices on intrastate sales below that set by the NGPA for interstate sales, the Supreme Court concluded:

"We reach a different conclusion with respect to the application of the pass-through prohibition to sales of gas in intrastate commerce. Although § 105(a) of the NGPA extended federal authority to control prices to the intrastate market, 15 U.S.C. § 3315(a) (1976 ed., Supp. V), Congress also provided that this exten-

sion of federal authority did not deprive the States of the power to establish a price ceiling for intrastate producer sales of gas at a level lower than the federal ceilings." 462 U.S. at 186, 103 S.Ct. at 2303, 76 L.Ed.2d at 507. (Footnote omitted).

*See Pennzoil Co. v. Public Service Comm'n,* 174 W.Va. 464, 327 S.E.2d 444 (1985).

■ The lesson of *Exxon* is that a federal statute will not be deemed to pre-empt a state or municipal enactment where the federal statute clearly exempts the subject matter of the state or municipal enactment from the ambit of the federal act. Here, the provisions in 42 U.S.C. § 6972(f) of the RCRA and W.Va.Code, 20–5E–18(d), of the WVHWMA preserve other statutory and State common law rights with regard to the management of hazardous wastes.

We are not persuaded by Sharon Steel's argument that we should follow the holdings of *Stablex Corp. v. Town of Hooksett,* 122 N.H. 1091, 456 A.2d 94 (1982), and *Rollins Environmental Services of Louisiana, Inc. v. Iberville Parish Police Jury,* 371 So.2d 1127 (La.1979). In *Stablex,* the challenged ordinance required approval of the voters in the town before a hazardous waste facility could be established therein. The court found the ordinance to be pre-empted by the comprehensive statewide regulation of hazardous wastes. The ordinance in *Rollins* completely banned any hazardous waste facility within the parish and was held to be void because of the extensive federal and state regulation in the area of hazardous wastes.

These two cases are inapplicable because neither dealt with the authority of a municipality or parish to abate public nuisances, which is the focus of the present case. Furthermore, as the City points out, the Louisiana legislature amended its Hazardous Waste Management Act, La.Rev.Stat. Ann. § 30:1144(B), to, in effect, reverse the *Rollins* decision and allow parishes to pass ordinances banning or zoning out hazardous waste facilities. Here, the ordinance does not completely ban hazardous waste disposal facilities, but is directed at those

that pose a substantial danger to human health or the environment.

We, therefore, conclude that because both the RCRA and the WVHWMA have provisions preserving common law actions, including nuisance actions, an ordinance passed by a municipality declaring the permanent disposal of hazardous wastes as therein defined to be a public nuisance is not pre-empted by either the federal or State acts.

## II.

■ Sharon Steel's argument that the City lacks the power to enact a hazardous waste ordinance rests upon our familiar law regarding the limited powers of municipalities recently set out in Syllabus Point 1 of *City of Fairmont v. Investors Syndicate of America, Inc.*, 172 W.Va. 431, 307 S.E.2d 467 (1983):

" 'A municipal corporation has only the powers granted to it by the legislature, and any such power it possesses must be expressly granted or necessarily or fairly implied or essential and indispensable. If any reasonable doubt exists as to whether a municipal corporation has a power, the power must be denied.' Syllabus Point 2, *State ex rel. Charleston v. Hutchinson*, 154 W.Va. 585, 176 S.E.2d 691 (1970)."

*See also* Syllabus Point 2, *Hyre v. Brown*, 102 W.Va. 505, 135 S.E. 656, 49 A.L.R. 1230 (1926).

■ We again stress that the ordinance is not a regulatory enactment, but is instead a penal ordinance designed to codify the common law of nuisance. We agree with the City's assertion that a municipality has the authority to declare the improper permanent disposal of hazardous wastes a public nuisance under W.Va.Code, 8–12–5(23), which empowers municipalities "[t]o provide for the elimination of hazards to public health and safety," where the term "hazardous waste" in the ordinance is defined, in part, as material which poses a

substantial present or potential hazard to human health or the environment.[10] Additional powers which further support the City's authority to pass the ordinance can be found in the following subsections of W.Va.Code, 8–12–5: (10) (authorizing regulation of garbage, trash, wastes, and other similar matters); (13) (authorizing the prevention of anything that is dangerous, offensive, or unwholesome to the public); and (44) (authorizing the protection and promotion of public morals, safety, health, welfare, and good order).

■ Admittedly, none of these subsections specifically refer to hazardous wastes, but there is no question from our cases that we have always considered these provisions to be a sufficient grant of authority enabling municipalities to abate public nuisances. In *Parker v. City of Fairmont*, 72 W.Va. 688, 79 S.E. 660 (1913), we discussed an earlier counterpart to W.Va.Code, 8–12–5(23), and concluded in Syllabus Point 1:

"Under the provision of the charter of the city of Fairmont, same as Code, ch. 47, sec. 28, that 'the council shall have power to abate or cause to be abated anything which, in the opinion of a majority of the whole council, shall be a nuisance,' the council may abate only that as a nuisance which is recognized as such *per se*, or branded as such by lawful statute or ordinance."

*See also* Syllabus Point 1, *Donohoe v. Fredlock*, 72 W.Va. 712, 79 S.E. 736 (1913); *Wood v. City of Hinton*, 47 W.Va. 645, 35 S.E. 824 (1900); *Town of Davis v. Davis*, 40 W.Va. 464, 21 S.E. 906 (1895).

■ It is generally recognized that even though a municipality has the power to enact an ordinance declaring some activity or thing to be a nuisance, such a declaration does not mean that the municipality is relieved of its burden to show that the activity or thing is in fact a nuisance when it seeks to enforce its ordinance. *See Yates v. City of Milwaukee*, 77 U.S. (10 Wall.) 497, 19 L.Ed. 984 (1870); *City of*

---

**10.** W.Va.Code, 8–12–5(23), states that a municipality is empowered "[t]o provide for the elimination of hazards to public health and safety and to abate or cause to be abated anything which in the opinion of a majority of the governing body is a public nuisance."

488

*Russellville v. Vulcan Materials Co.,* 382 So.2d 525 (Ala.1980); *City of Denver v. Mullen,* 7 Colo. 345, 3 P. 693 (1884); *Jewel Tea Co. v. Town of Bel Air,* 172 Md. 536, 192 A. 417 (1937); *Potashnick Truck Service, Inc. v. City of Sikeston,* 351 Mo. 505, 173 S.W.2d 96 (1943); *Painter v. Town of Forest Acres,* 231 S.C. 56, 97 S.E.2d 71 (1957); *City of Houston v. Lurie,* 148 Tex. 391, 224 S.W.2d 871, 14 A.L.R.2d 61 (1949); *Eno v. City of Burlington,* 125 Vt. 8, 209 A.2d 499 (1965); 6 E. McQuillin, The Law of Municipal Corporations § 24.83 (3d ed. 1980); 58 Am.Jur.2d *Nuisances* § 172 (1971).

We have adopted a rather similar approach in the cases we have decided under the antecedent of W.Va.Code, 8–12–5(23). In *Teass v. City of St. Albans,* 38 W.Va. 1, 17 S.E. 400 (1893), we held that even though a municipality declares in an ordinance that something is a public nuisance, this does not give the municipality the authority to abate the nuisance without first prosecuting the matter in a court. In *Parker,* 72 W.Va. at 690–91, 79 S.E. at 661–62, we acknowledged that a municipality has the power to enact an ordinance declaring a matter a nuisance, but noted:

"That provision can not rightly be construed to mean that the council may determine that to be a nuisance which is not such by the common law, by statute, or by ordinance. It gives power to abate nuisances, not to determine what shall be considered nuisances. It plainly relates to nuisances *per se,* those primarily branded as such by the law.... The charter provision grants a police power of abatement; not an arbitrary power of determining that something is a nuisance which by no law is known to be such. It is not reasonable to presume that the Legislature meant to grant such arbitrary power to the municipal authorities. True, the opinion of the majority of the whole council is called for by the provision. But that opinion is to be applied in discerning that the thing complained of comes within the category of nuisances pronounced to be such by law. Clearly the power granted is to abate what the

law holds to be a nuisance, not to enact that any particular thing is a nuisance."

▪ We have more recently held that whether some activity or thing is a nuisance is generally a question of fact, as stated in Syllabus Point 3 of *Sticklen v. Kittle,* 168 W.Va. 147, 287 S.E.2d 148 (1981):

"As a general rule, a fair test as to whether a particular use of real property constitutes a nuisance is the reasonableness or unreasonableness of the use of the property in relation to the particular locality involved, and ordinarily such a test to determine the existence of a nuisance raises a question of fact."

*See also Mahoney v. Walter,* 157 W.Va. 882, 205 S.E.2d 692 (1974).

Therefore, we conclude that while the ordinance declares the permanent disposal of hazardous wastes, as therein defined, within the City of Fairmont to be a public nuisance, the issue of whether a given site is a public nuisance is a question of fact dependent upon the circumstances existing at such site. We, however, affirm the power of the City to enact such an ordinance as we believe by its terms, under the definition of "hazardous waste," a common law nuisance is defined.

### III.

▪ The final argument presented is that the ordinance is so arbitrary and unreasonable that it violates substantive due process standards. The substantive due process standard that we apply to legislative enactments is summarized in Syllabus Point 1 of *State v. Wender,* 149 W.Va. 413, 141 S.E.2d 359 (1965), *overruled on other grounds, Hartsock-Flesher Candy Co. v. Wheeling Wholesale Grocery Co.,* 174 W.Va. 538, 328 S.E.2d 144 (1984):

"The legislature is vested with a wide discretion in determining what the public interest requires, the wisdom of which may not be inquired into by the courts; however, to satisfy the requirements of due process of law, legislative acts must bear a reasonable relationship to a proper legislative purpose and be neither arbitrary nor discriminatory."

*See also DeCoals, Inc. v. Board of Zoning Appeals,* 168 W.Va. 339, 284 S.E.2d 856 (1981); *Thorne v. Roush,* 164 W.Va. 165, 261 S.E.2d 72 (1979); *O'Neil v. City of Parkersburg,* 160 W.Va. 694, 237 S.E.2d 504 (1977); *State ex rel. Harris v. Calendine,* 160 W.Va. 172, 233 S.E.2d 318 (1977). We noted in *Hartsock-Flesher Candy Co.* that substantive due process challenges to legislative enactments are not now generally favored.

 Fairmont's City Council stated several reasons in the preamble of its ordinance for addressing the issue of hazardous waste disposal:

> "The City Council finds that permanent disposal of hazardous wastes within the City is a nuisance in that it may depreciate property values; have an adverse impact on the City's ability to attract new business and industry and encourage expansion of existing business and industry; create a continuing serious anxiety and concern among city residents and visitors concerning the existence of a permanent hazardous waste disposal site within the city, all of which are offensive and constitute injury and annoyance to the public and individuals."

As previously noted, the City has the authority under its police powers to protect the health and safety of its citizens as well as to ensure the economic integrity of the City. We find the City's exercise of its authority to abate public nuisances to be a responsible and reasonable approach to the problems potentially presented by permanent hazardous waste facilities which are substantially hazardous to the human health or the environment.

Sharon Steel argues that Section 2 of the ordinance makes an arbitrary and discriminatory distinction between permanent hazardous waste disposal and temporary hazardous waste storage. Additionally, Sharon Steel argues that the ordinance does not address the problems of hazardous waste transportation and generation within the City. We are not presented with a sufficiently developed record to determine if the distinction between permanent disposal and temporary storage of hazardous wastes is indeed arbitrary and discriminatory. We doubt whether this would raise a substantive due process issue because an action based on the common law of public nuisance could also be brought against a person temporarily storing hazardous wastes. W.Va.Code, 20–5E–18(h). Consequently, we hold that the ordinance does not violate substantive due process.

For the foregoing reasons, we conclude that Fairmont's Ordinance No. 597 is valid and affirm the decision of the Circuit Court of Marion County.

Affirmed.