411 S.E.2d 456

**Tom McCALLISTER, Plaintiff Below, Appellee,**

v.

**Robert NELSON, Mayor of the City of Huntington, West Virginia, Defendant Below, Appellant**

**No. 19761.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1991.

Decided Oct. 31, 1991.

Clovis D. Kuhn, Huntington, for appellee.

Scott A. Damron, Huntington, for the appellant.

BROTHERTON, Justice:

This appeal is before the Court on the issue of whether a municipal charter provision, which provides the mayor with the power to veto ordinances and resolutions of city council, is a valid exercise of municipal power under W.Va.Code § 8–1–7 (1990).

On October 23, 1989, a member of the Huntington City Council introduced a proposed ordinance in council entitled "An Ordinance Protecting the Proposed East–West Corridor from 17th Street to 1st Street." The ordinance stated that:

> BE IT ORDAINED BY THE COUNCIL OF THE CITY OF HUNTINGTON, CABELL AND WAYNE COUNTIES, WEST VIRGINIA, that the proposed east-west corridor running from 17th Street West to 1st Street, said area being better known as the old B & O Right-of-Way, be protected from further development in order to preserve the intent of the City's comprehensive plan.

The Mayor contends that, contrary to the stated intent of the proposal, this ordinance was enacted in order to block the development of a 20–unit apartment complex for the mentally disabled which was planned to be built on that strip of land.

The Huntington City Council approved the ordinance by a vote of seven to four on November 13, 1989. However, the Mayor vetoed the ordinance pursuant to section 2.7 of the City of Huntington Charter.[1]

---

1. The Mayor states that the "old B & O Right-of-Way" is owned primarily by CSX. He contends that the old proposed street plan had been resurrected only when the Evergreen Project, Inc., had decided to develop a supervised apartment-style housing complex for the severely mentally disabled on that site. Area residents campaigned against the project.

Since the area was zoned R–2, single family, a special exception was required to provide for a

Shortly thereafter, the appellee, a member of the Charter Board, filed a declaratory judgment action in the Circuit Court of Cabell County. In his complaint, the appellee requested "a judgment declaring and adjudicating the rights and duties of the defendant to veto ordinances legally adopted by Huntington City Council under the provisions of the Huntington City Charter and applicable state law."

On February 13, 1990, an attempt by the Council to override the veto failed because they did not obtain the required two-thirds majority. On April 23, 1990, the Cabell County Circuit Court issued an opinion which stated that a mayor may not have the power to veto in West Virginia. It is from that ruling that the Mayor filed this petition for appeal.

In 1985, a new charter was adopted by the City of Huntington. Under West Virginia law, a municipality may choose their government from four separate plans. W.Va.Code § 8-3-2. The city chose the strong mayor plan, which is defined as:

(1) There shall be a mayor elected by the qualified voters of the city; and a city council elected at large or by wards, or both at large and by wards, by the qualified voters of the city;

(2) The council shall be the governing body;

(3) The mayor shall be the administrative authority; and

(4) Other officers and employees shall be appointed by the mayor or by his order in accordance with this chapter, but such appointments by the mayor or by his order may be made subject to the approval of the council.

*Id.*

The new charter provided the mayor with the ability to veto decisions of city council. The veto provision in the new Charter provides as follows:

multi-family zoning of R–3 or R–4. Counsel for the Board of Zoning Appeals advised that a denial of special exception would possibly violate federal law by discriminating against the handicapped in the area of housing. 42 U.S.C.

## SECTION 2.7 SUBMISSION OF ORDINANCE TO MAYOR;

### VETO POWER

Within ninety-six hours after the adjournment of any Council meeting, the City Clerk shall present to the Mayor the record of proceedings of the meeting and all ordinances and resolutions adopted at the meeting. The Mayor, within seven days of receipt by him or her of an ordinance or resolution, shall return it to the City Clerk with his or her approval signature, with his or her written veto, or the Mayor may not act. If the ordinance or resolution is signed by the Mayor, it shall become operative as specified in the ordinance. If the ordinance is disapproved by veto, the Mayor shall attach thereto a written statement explaining the reasons for his or her veto. If the mayor does not act, the ordinance or resolution shall become operative at noon on the seventh calendar day after it is received by the Mayor. Ordinances or resolutions vetoed by the Mayor shall be presented by the City Clerk to Council for its consideration at its next regular meeting and should Council then or thereafter adopt the ordinance or resolution by an affirmative vote of at least two-thirds of all its members, it shall be operative upon the date specified by Council, but in no event less than fifteen days after the date of final passage. If no operative date is so specified, it shall become operative at noon on the fifteenth calendar day after the date of final passage. The Mayor's veto power shall extend to disapproving or reducing any individual appropriation item in the budget or any ordinance or resolution, but shall not extend or apply to any appropriation or resolution authorized pursuant to Section 3.16 of the Charter.

The Mayor used the veto provision from its adoption, without objection, until the handicapped complex was proposed.

§ 3604(f)(1), 24 C.F.R. 100.50(b)(3) and 24 C.F.R. 100.70(a) and (c) forbid discriminating in housing based upon, among other reasons, handicapped status. Thus, the Board of Zoning Appeals approved the special exception.

The appellee contends that the circuit court was correct in ruling that veto power is not included in those powers which were granted by the legislature. He points to our opinion in *Sharon Steel Corp. v. City of Fairmont*, 175 W.Va. 479, 334 S.E.2d 616 (1985), in which this Court reiterated that a municipal corporation has only those powers granted to it by the legislature, and if any reasonable doubt exists, the power is to be denied. *Id.*, 175 W.Va. at 487, 334 S.E.2d at 624. However, the appellee's argument ignores the fact that in *Sharon Steel*, we overcame the objections to the municipal ordinance directed at abating a public nuisance by finding the authority to abate the nuisance within a general statute section permitting "elimination of hazards to public health and safety." *Id.*, 175 W.Va. at 487, 334 S.E.2d at 624–25. Thus, the municipality had the power to identify the improper disposal of hazardous waste as a nuisance even though the statute did not specifically refer to "hazardous wastes." *Id.*, 175 W.Va. at 487, 334 S.E.2d at 625.

The appellant maintains that the "Home Rule Amendment" of the West Virginia Constitution, Art. VI, sec. 39(a) properly authorizes the exercise of municipal authority by veto. The amendment states, in pertinent part, that:

> The legislature shall provide by general laws for the incorporation and government of cities, towns and villages and shall classify such municipal corporations, on the basis of population, into not less than two nor more than five classes. Such general laws shall restrict the powers of such cities, towns and villages to borrow money and contract debts, and shall limit the rate of taxes for municipal purposes, in accordance with section one,

article ten of the Constitution of the State of West Virginia. Under such general laws, the electors of each municipal corporation, wherein the population exceeds two thousand, shall have power and authority to frame, adopt and amend the charter of such corporation, or to amend an existing charter thereof, and through its legally constituted authority, may pass all laws and ordinances relating to its municipal affairs: Provided, that such charter or amendment thereto, and any such law or ordinance so adopted, shall be invalid and void if inconsistent or in conflict with this Constitution or the general laws of the State then in effect, or thereafter, from time to time enacted.

Besides power to contract debts, borrow money, and set taxes, the amendment provides that the municipality has the authority to exercise power unless it is "inconsistent or in conflict with this Constitution or the general laws of the State...." *Id.*

West Virginia Code § 8-1-7 (1990) further enumerates the power granted to municipalities. That section states, in part, that:

> The enumeration of powers and authority granted in this chapter shall not operate to exclude the exercise of other powers and authority *fairly incidental thereto or reasonably implied and within the purposes of this chapter;* and the provisions of this chapter shall be given full effect without regard to the common-law rule of strict construction, and particularly when the powers and authority are exercised by charter provisions framed and adopted or adopted by revision of a charter as a whole or adopted by charter amendment under the provisions of this chapter.[2]

---

**2.** West Virginia Code § 8-11-1 (1990) states that:

> To carry into effect the powers and authority conferred upon any municipality or its governing body by the provisions of this chapter or any past or future act of the Legislature of this state, the governing body shall have plenary power and authority to make and pass all needful ordinances, orders, bylaws, acts, resolutions, rules and regulations, not contrary to the Constitution and laws of this state....

Further, W.Va.Code § 8-10-1 (1990) provides that:

> When not otherwise provided by charter provision or general law, the mayor of every municipality shall be the chief executive officer of such municipality, shall have the powers and authority granted in this section, and shall see that the ordinances, orders, bylaws, acts, resolutions, rules and regulations of the governing body thereof are faithfully executed....

Thus, a municipality can exercise powers that are reasonably implied from or fairly incidental to the law and within the purposes of this chapter. Moreover, W.Va. Code § 8–12–2 provides municipalities with plenary power and authority if it is not inconsistent or in conflict with our Constitution or the general laws of this State:

(a) In accordance with the provisions of the "Municipal Home Rule Amendment" to the Constitution of this State, and in addition to the powers and authority granted by (i) such Constitution, (ii) other provisions of this chapter, (iii) other general law, and (iv) any existing charter, any city shall have plenary power and authority by charter provision not inconsistent or in conflict with such Constitution, other provisions of this chapter or other general law, ... to provide for the government, regulation and control of the city's municipal affairs....

■ In syllabus point 1 of *City of Fairmont v. Investors Syndicate of America,* 172 W.Va. 431, 307 S.E.2d 467 (1983), we held that a " 'municipal corporation has only the powers granted to it by the legislature, and any such power it possesses must be expressly granted or necessarily or fairly implied or essential and indispensable. If any reasonable doubt exists as to whether a municipal corporation has a power, the power must be denied.' Syllabus Point 2, *State ex rel. Charleston v. Hutchinson,* 154 W.Va. 585, 176 S.E.2d 691 (1970)." Similarly, in *Marra v. Zink,* 163 W.Va. 400, 256 S.E.2d 581 (1979), we found that "[m]unicipalities are creatures of the State who draw their powers from the law which creates them; therefore, if a city charter provision conflicts with either our constitution or our general laws, the provision, being the inferior law, must fail." *Id.* 163 W.Va. at 404, 256 S.E.2d at 584 (citations omitted). *See also State ex rel. City of Charleston v. Hutchinson,* 154 W.Va. 585, 176 S.E.2d 691

(1970); *Matter of City of Morgantown,* 159 W.Va. 788, 226 S.E.2d 900 (1976).

However, in order to defeat the validity of a charter provision, the challenger must overcome a presumption that legislative enactments are immune from judicial interference.

A municipal council or other governing body of a municipality, when acting or attempting to act in a legislative capacity, upon a subject within the scope of its powers, is entitled to the same immunity from judicial interference with the exercise of legislative discretion as is the state legislature. *See, e.g., Hackney v. City of Guthrie,* 171 Okla. 320, 322, 41 P.2d 705, 707 (1935). A court of equity normally may not, therefore, enjoin a municipal legislative body from exercising legislative powers by enacting a municipal ordinance.

*Perdue v. Ferguson,* 177 W.Va. 44, 350 S.E.2d 555, 559 (1986). *See also Railway Express Agency v. Commonwealth of Virginia,* 282 U.S. 440, 51 S.Ct. 201, 75 L.Ed. 450 (1931).[3]

■ In this case, we can find no state law or constitutional provision violated by the veto provision.[4] The omission of a specific provision allowing a veto in the statute or Constitution does not mean it is forever forbidden. Given that W.Va.Code § 8–1–7 allows the exercise of "other powers and authority fairly incidental thereto or reasonably implied," some unenumerated powers must exist. After reviewing the evidence below, we find that the appellee has failed to prove either that a veto provision in a municipal charter violated either state law or the Constitution, or that a reasonable doubt existed as to whether the city had the power to enact the veto provision. Given that the city approved the strong mayor system, the appellee failed to overcome the presumption of immunity from judicial interference which exists in the favor of municipal legislative enactments.

---

3. On March 28, 1985, the State Attorney General certified the Huntington charter as "consistent in all respects with the Constitution and general law of the State of West Virginia."

4. Other jurisdictions have held veto provisions valid even when no specific authorization existed in their state statute. *See Flanigen v. Preferred Development Corp.,* 226 Ga. 267, 174 S.E.2d 425 (1970).

■ A charter provision which authorizes a veto by a mayor of a municipality to an ordinance or resolution of city council is reasonably implied and fairly incidental to the granted or enumerated powers within W.Va.Code § 8–1–7 and the West Virginia Constitution. Therefore, we reverse the April 23, 1990, ruling of the Circuit Court of Cabell County and hold that the provision of the charter of the City of Huntington, which provides the mayor with the power to veto ordinances and resolutions of the city council, is a valid exercise of municipal authority under W.Va.Code § 8–1–7 (1990).

Reversed.