**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January 2017 Term**

**FILED**
**February 9, 2017**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 15-1223

**TONY COFFMAN, ROBERT MARSH, MARY MARSH,
JAMES MARSH AND MARILYN MARSH,**
Plaintiffs Below, Petitioners

**V.**

**NICHOLAS COUNTY COMMISSION AND ITS MEMBERS,
DR. YANCY S. SHORT, M.D.; JOHN R. MILLER; AND KENNETH ALTIZER,
INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES,
AND CHECKS AUTO PARTS, LLC,**
Defendants Below, Respondents

Appeal from the Circuit Court of Nicholas County
Honorable Gary L. Johnson, Judge
Civil Action No. 14-C-122
**AFFIRMED**

Submitted: January 18, 2017
Filed: February 9, 2017

W. Henry Jernigan
Mary R. Rowe Litman
Arie M. Spitz
Dinsmore & Shohl, LLP
Charleston, West Virginia
Attorneys for the Petitioners

Charles R. Bailey
Michael W. Taylor
Bailey & Wyant, PLLC
Charleston, West Virginia
Attorneys for the Respondents

**JUSTICE DAVIS delivered the Opinion of the Court.**

**JUSTICE KETCHUM dissents and reserves the right to file a dissenting opinion.**

**JUSTICE WORKMAN concurs and reserves the right to file a concurring opinion.**

**SYLLABUS BY THE COURT**

1.       "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus point 1, *Chrystal R. M. v. Charlie A. L.* 194 W. Va. 138, 459 S.E.2d 415 (1995).

2.   "The legislative authorizations to grant an annexation through a minor boundary adjustment to the county commission in *W. Va. Code*, 8-6-[5] [(2001) (Repl. Vol. 2012)] is a proper delegation of legislative authority."  Syllabus point 3, *In re the Petition of the City of Beckley to Annex*, 194 W. Va. 423, 460 S.E.2d 669 (1995).

3.       "In general, a county commission enjoys a broad discretion in exercising its legislative powers in determining the geographic extent of a minor boundary adjustment sought by a municipality under *W. Va. Code* 8-6-5 [(2001) (Repl. Vol. 2012)], so long as a portion of the area to be annexed is contiguous to the municipality."  Syllabus point 6, *In re the Petition of the City of Beckley to Annex*, 194 W. Va. 423, 460 S.E.2d 669 (1995).

**Davis, Justice:**

This appeal was brought by the Petitioners, Tony Coffman, Robert Marsh, Mary Marsh, James Marsh, and Marilyn Marsh (collectively, "Petitioners"), plaintiffs below, from an order of the Circuit Court of Nicholas County that, in part, granted summary judgment in favor of the Respondents, Nicholas County Commission and its members, Dr. Yancy S. Short, M.D.; John R. Miller; and Kenneth Altizer, individually and in their official capacities (collectively, "Respondents"), defendants below. The matter involves the proposed expansion of municipal geographic boundaries by minor boundary adjustment[1] by the City of Summersville, West Virginia as approved by the Nicholas County Commission.

The assignments of error advanced by the Petitioners can be summarized as asserting that certain statutory requirements governing annexation were not met during the approval process; the annexation was not in the best interests of Nicholas County, West Virginia; the annexation amounted to a public nuisance; and the annexation resulted in a diminution of the Petitioners' property value such that there was an unconstitutional taking of property without compensation. After careful review of the order, the briefs, the record submitted on appeal, and the oral argument of the parties, we affirm.

---

[1]*See* West Virginia Code § 8-6-5 (2001) (Repl. Vol. 2012). Relevant portions of the statute will be set out and addressed within the body of the discussion herein.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

By Deed dated March 2, 2012, Rodney L. LeRose and Barbara LeRose conveyed twenty acres, more or less, located in Nicholas County to Checks Auto Parts, LLC ("Checks"). On or about August 21, 2012, Checks submitted an application to the Nicholas County Commission seeking authority to operate a salvage yard on the property. The application by Checks was made pursuant to an Ordinance of the Nicholas County Commission enacted in 1984 establishing a salvage yard permit system.[2]

The Nicholas County Commission scheduled and duly noticed a public hearing on the application by Checks. A public hearing was held on September 4, 2012. The minutes of the public hearing reflect that Petitioner, Tony Coffman, representing Coffman Metals, a recycling facility located in Nicholas County, was present and spoke at the hearing. The minutes further reflect that various environmental permits already obtained by Checks

---

[2]The Nicholas County Ordinance, as amended, established a salvage yard permit system with an application process requiring an applicant to meet certain requirements such as providing maps; plots of proposed operations; a business plan; plans addressing disposal of environmentally unsafe waste; evidence of compliance with environmental regulations; plans for storage; evidence of insurance; pictures; measures for addressing surface, stream, or ground water pollution; and fire hazard and protection measures. Among other things, the ordinance provided for application fees; rules and regulations regarding site design standards; location standards; mandated the determination of the effect of proposed salvage yards in terms of property values, investment, and social, economic, and environmental impact on community growth and development; and provided for enforcement and penalties for violations.

were discussed. Additionally, discussion was had regarding the proximity of certain homes, a school, and a park. Further, a concern over noise levels was expressed by some individual commissioners. At the conclusion of the public hearing, the Nicholas County Commission indicated that it wanted more time to consider the matter. Thus, the Nicholas County Commission voted to close the public hearing and table the matter until October 2, 2012.

At a meeting of the Nicholas County Commission on October 2, 2012, two of the Commissioners indicated they had gone to the proposed site in order to review it and visually see how the project would sit on the property. The Nicholas County Commission determined that the application of Checks to obtain a Nicholas County salvage yard permit met the requirements of the Nicholas County Ordinance. The permit was issued by unanimous vote of the Nicholas County Commission.

Thereafter, on October 17, 2012, Checks applied to the West Virginia Department of Transportation Division of Highways ("DOH") for a salvage yard permit pursuant to West Virginia Code §§ 17-23-1 through 13, which provides licensing requirements for the establishment, operation, maintenance, and use of salvage yards. On or about November 1, 2012, the DOH Outdoor Advertising/Salvage Yards Chief wrote to Checks returning Checks' paperwork and application fee, and denying the application on the grounds that a certified survey was not included in the application. The denial letter noted

3

that aerial photos with demarcated distance measurements could not serve as location representation in lieu of a certified survey.

Some fifteen months later, on January 13, 2014, at a regular meeting of the Summersville City Council, the Mayor presented the issue of a proposed annexation of the Checks' twenty acre property. Three individuals, including Petitioners Tony Coffman and Robert Marsh, spoke in opposition to the proposed annexation because of its "proposed usage as a salvage yard." A motion was made to consider the annexation of the property to be zoned as an industrial park. Representatives of Checks were asked to speak. The minutes of the City Council meeting reflect that Checks representatives stated they wanted to get the property within the city limits so as to obtain a permit for a salvage yard. As cursorily reflected in the minutes of the City Council meeting, there was a lengthy discussion which concluded with passage of the annexation motion by a five-to-three vote of City Council members. Following passage of the motion, on March 20, 2014, the City of Summersville filed a Petition for Annexation before the Nicholas County Commission seeking to increase the corporate limits of the City by minor boundary adjustment pursuant to West Virginia Code § 8-6-5 (2001) (Repl. Vol. 2012).

Thereafter, the Nicholas County Commission proceeded to publish notice of the proposed annexation and of a date and time for public hearing on the proposal. A public

4

hearing was held on August 5, 2014.[3]  The Nicholas County Commission approved the annexation and entered an "Order on Boundary Adjustment" granting the application for annexation by minor boundary adjustment, which allowed the City of Summersville to annex the Checks' twenty acre property together with two easement tracts in accord with the Petition for Annexation.

The Petitioners, who live in Nicholas County but who are not residents of Summersville, West Virginia, initiated action with the filing of a Complaint on October 2, 2014, followed by an Amended Complaint filed on March 24, 2015, naming the Nicholas County Commission, individual Commission members, and Checks as defendants.  The Petitioners sought an order declaring the annexation order void, compensation for the taking

---

[3]We observe that the minutes of the public hearing reflect counsel for Petitioners appeared, provided a petition, a summary handout, and remarks advancing various concerns and opposition to the annexation.  Additionally, Petitioners, Mr. Coffman, Mr. Robert Marsh, Mr. James Marsh, and Ms. Mary Marsh, spoke generally against the annexation and more specifically against the proposed use of the property as a salvage yard.  They addressed issues regarding type of roadway and access to the roadway; lead contamination; environmental, health, and welfare concerns; possible diminution of property values; and potential water flow concerns.  Another individual with bordering property spoke about the contamination of the soil with lead and raised concerns that disturbing the property would result in creek contamination.  An engineer represented that environmental regulators had been on the site testing ponds and land where lead may be present and, if necessary, would issue orders directing abatement, which would be complied with.  An individual who owned approximately 350 acres of property around and joining the property considered for annexation spoke about his development plans and indicated he could not foresee problems.  The owner of Checks spoke indicating that the issue was really about business competition and directed his remarks to Petitioner, Mr. Coffman, who owns a recycling operation in Nicholas County.

of their property, a declaration that Checks' operation of an automotive junkyard on the annexed property was in violation of ordinances of the City of Summersville and of Nicholas County, a cease and desist order directing Checks to cease operations of an automotive junkyard on the property, and an order directing Checks to remove junk and restore the property. On April 17, 2015, Checks, by its owner, James M. Buckland, *pro se*, filed a letter answer, stating he believed he had done everything legal; proper documentation had been filed; his intentions were to stay in good standing by following the guidelines, rules, and regulations; notice and opportunity to be heard had been provided; and that the case was frivolous and should be dismissed. The Answer of the Nicholas County Commission denied the allegations of the Amended Complaint and raised various affirmative defenses including, but not limited to, the defense that the annexation was proper and in compliance with all controlling law and procedure. There was extremely limited written discovery. The Petitioners filed a motion for summary judgment, which the Nicholas County Commission opposed. Additionally, the Nicholas County Commission filed its own counter-motion for summary judgment. A hearing was held before the circuit court on October 15, 2015. At the hearing, Checks was represented by counsel who indicated orally that Checks would join the Nicholas County Commission's motion for summary judgment.

On November 30, 2015, the circuit court entered its "Order Granting County Commission's Motion for Summary Judgment; Dismissing County Commission Defendants; Denying Plaintiffs' Motion for Summary Judgment, in part; and Continuing Hearing on

6

Remainder of Plaintiffs' Motion." In summary, the circuit court first found that there were issues of fact with respect to Checks that dictated denying the motion for injunctive relief and establishing a schedule for further proceedings. Second, the circuit court found that the Nicholas County Commission complied with the statutory requirements in entering the Order on Boundary Adjustment which authorized the City of Summersville's annexation of the property. As to the Nicholas County Commission, the circuit court indicated the Order was final and appealable. The instant appeal followed.

## II.

## STANDARD OF REVIEW

This matter involves legal conclusions regarding the scope and application of annexation statutes. Accordingly, a *de novo* standard of review is applied. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R. M. v. Charlie A. L.,* 194 W. Va. 138, 459 S.E.2d 415 (1995). *Accord* Syl. pt. 1, *In re the Petition of the City of Beckley to Annex*, 194 W. Va. 423, 460 S.E.2d 669 (1995).

Having set forth the standard of review governing our consideration of this case, we proceed to address the issues raised.

## III.

7

**DISCUSSION**

The Petitioners advance seven assignments of error. Five of the assignments of error raise issues regarding the asserted failure to abide by statutory provisions governing annexation by minor boundary adjustment. Additionally, the Petitioners assert that the trial court erred in finding the annexation is not a public nuisance. The Petitioners also advance the claim that the trial court erred in finding that the annexation was not an unconstitutional taking of property. In order to place the issue of annexation in context, we will briefly outline annexation by municipalities. We will then proceed to address the Petitioners' assignments of error.

### A. Annexation of Unincorporated Territory by Municipalities

Municipal boundaries may be extended only when and as prescribed by law. Municipal corporations in West Virginia have been empowered by the Legislature to annex unincorporated territory in accordance with several statutory mechanisms. The first, annexation by election, is initiated by a petition signed by five percent or more of a city's freeholders and must be approved by a majority voting in both the city and the additional territory to be annexed. W. Va. Code § 8-6-2 (2003) (Repl. Vol. 2012). A second method provides for annexation without an election whereby a municipality may annex territory by ordinance if a majority of qualified voters in the area proposed to be annexed file a petition, and a majority of all freeholders of the additional territory file a petition. The municipality's determination regarding the sufficiency of the petitions is reviewable by the courts.

8

W .Va. Code § 8-6-4 (2001) (Repl. Vol. 2012). A third method, only in place since 2009, provides a statutory scheme for annexation without election for municipalities in counties that have adopted countywide zoning including site-specific properly identified urban growth boundaries. W. Va. Code § 8-6-4a (2009) (Repl. Vol. 2012). The fourth statutory scheme, and the one at issue here, allows for annexation by minor boundary adjustment. W. Va. Code § 8-6-5. This process does not require a petition by qualified voters or freeholders or an election. Instead, the municipality must petition the county commission for permission to annex. In the event the petition meets certain statutory requirements, a notice regarding the proposed annexation must be published, and a special public hearing must be held before the county commission, which considers certain minimum statutory factors in making a decision whether to grant or deny the petition for annexation. W. Va. Code § 8-6-5.

We observe that it is recognized that the Legislature may delegate the power of annexation, within constitutional limits. Indeed, a municipal corporation has only the powers granted to it by the Legislature. *See* Syl. pt. 1, *McCallister v. Nelson*, 186 W. Va. 131, 411 S.E.2d 456 (1991). In connection with the minor boundary adjustment annexation method at issue here, the Legislature has delegated to the county commissions the authority to grant an annexation by minor boundary adjustment. We note that the general powers of a county commission are set forth in Article 9, Section 11 of the West Virginia Constitution, which includes a provision that "[s]uch commissions may exercise such other powers, and perform such other duties, not of a judicial nature, as may be prescribed by law." We

9

previously have held: "The legislative authorizations to grant an annexation through a minor boundary adjustment to the county commission in *W. Va. Code,* 8-6-[5] . . . is a proper delegation of legislative authority." Syl. pt. 3, *In re the Petition of the City of Beckley to Annex*, 194 W. Va. 423, 460 S.E.2d 669.

Having generally outlined the authority of the Legislature to delegate the power of annexation to municipalities, as well as the various statutorily designed methods of annexation, we proceed to consider the assignments of error advanced by the Petitioners.

### B. The Property Subject to Annexation is Contiguous with the Geographic Boundary of the City of Summersville

The Petitioners' first assignment of error is that the circuit court erred when it found that the annexed property was "contiguous" with the City limits. The annexation by minor boundary adjustment defines "contiguous" as meaning:

> that at the time the application for annexation is submitted, the territory proposed for annexation either abuts directly on the municipal boundary or is separated from the municipal boundary by an unincorporated street or highway, or street or highway right-of-way, a creek or river, or the right-of-way of a railroad or other public service corporation, or lands owned by the state or the federal government.

W. Va. Code § 8-6-5(f)(1). In a footnote in its order, the circuit court found: "Although not argued at length and not necessary to the Court's ruling in this case, the Court does find that

10

the 'contiguous' requirement of West Virginia Code Section § 8-6-5 is satisfied because the property annexed directly abuts the Frontage Road which was properly annexed in 2012."

The Petitioners assert that the annexed property is "not truly contiguous" but rather is only "technically linked" to the City by virtue of a narrow private easement. It is further argued that no residential or commercial property lying within the corporate limits of the City shares a common boundary line with the annexed property. The Petitioners interpret "contiguity" as requiring a common boundary line between the City and residential or commercial property. The Petitioners also contend that the consequence of annexation is the creation of an "outrageous geographical result" consisting of a "virtual island" that defies common sense and is therefore unreasonable and arbitrary.

On the other hand, the Respondents contend that the statutory requirement of the term "contiguous" is met by virtue of the fact that the annexed property abuts the City boundary. The Respondents note that, in September 2012, a minor boundary annexation petition was approved by the Nicholas County Commission which adjusted the municipal boundaries to include property including Frontage Road. The stated purpose of the 2012 annexation was to extend the municipal boundary past the site of Nicholas County High School so as to provide full access for City of Summersville police to patrol and protect the high school and surrounding area. Thus, as of September 4, 2012, and at the time of the application for minor boundary adjustment in 2014, the municipal boundary of the City

11

included Frontage Road. The Respondents note that the property at issue includes two tracts of land that connect directly to the municipal boundary of the City by virtue of their connection to Frontage Road. The two tracts consist of right-of-ways of existing private roads connecting to Frontage Road and thereby directly abutting the City boundary line.[4] Further, the Respondents claim that there is no statutory requirement that the abutting property of the City be residential or commercial property.

The relevant statutory language at issue defines "contiguous" for purposes of annexation by minor boundary adjustment as requiring only that the "territory proposed for annexation . . . abuts directly on the municipal boundary. . . ." W. Va. Code § 8-6-5(f)(1). The statute does not dictate how much of the property must be "contiguous" with or "abut directly" the municipality. Nor does the statute direct where or what part of the municipality the property must be contiguous to or directly abut. Specifically, the statute simply does not direct that the property sought to be annexed must be contiguous to municipal property that is either residential or commercial in character. "In general, a county commission enjoys a broad discretion in exercising its legislative powers in determining the geographic extent of a minor boundary adjustment sought by a municipality under W. Va. Code 8-6-5 . . . , so long

---

[4]The Petitioners suggest there was something improper about the 2012 annexation with their comments that the 2012 annexation was "conveniently" done in the same time period that the Nicholas County Commission considered the Checks permit. However, there is nothing in the record before us, either factually or legally, regarding any lack of statutory compliance with respect to the 2012 annexation by the City of Summersville of the Frontage Road property.

12

as a portion of the area to be annexed is contiguous to the municipality." Syl. pt. 6, *In re the Petition of the City of Beckley to Annex*, 194 W. Va. 423, 460 S.E.2d 669. As in the situation with the Beckley annexation, the issue is "not that the annexed portion does not abut the municipality's boundary. Rather, the issue involves the question of how much of the boundary of the annexed area must be contiguous to the city limits." *Id*. at 430, 460 S.E.2d at 676. The area at issue in the Beckley annexation contained a 500 foot strip along a state route abutting the city, and the rest of the property was adjoined to the connecting strip. *Id*. at 429, 460 S.E.2d at 675. Nevertheless, the Court found that it was error for the lower court to determine that the configuration was such that the county commission acted unreasonably. Thus, the matter was remanded for entry of an order directing that the county commission order granting annexation by minor boundary adjustment be affirmed. *Id*. at 431, 460 S.E.2d at 677.

It is clear that the annexation property at issue here is, in fact, "contiguous" in that the territory subject to annexation "directly abuts" the municipal boundary of the City as established in 2012. Thus, the circuit court properly concluded that the statutory requirement of contiguity was satisfied.

Inasmuch as we have concluded that the property subject to annexation is contiguous with the geographic boundary of the City of Summersville, we turn our attention

13

to the next assignment of error regarding compliance with the statutory criteria for annexation.

### C. The Property Subject to Annexation Comports with the Criteria for Property Subject to Annexation by Minor Boundary Adjustment

The Petitioners assert that the property is not subject to annexation by minor boundary adjustment because it does not fit the statutory criteria. Specifically, it is argued that the property does not include a street or highway and one or more freeholders, nor does the property include a street or highway that does not include a freeholder but is necessary for the provision of emergency services in the territory being annexed.

The annexation by minor boundary adjustment statute, in relevant part, provides:

> (b) *In addition to any other annexation configuration*, a municipality may incorporate by minor boundary adjustment: (i) Territory that consists of a street or highway as defined in section thirty-five [17C-1-35], article one, chapter seventeen-c of this code and one or more freeholders; or (ii) territory that consists of a street or highway as defined in section thirty-five, article one, chapter seventeen-c of this code which does not include a freeholder but which is necessary for the provision of emergency services in the territory being annexed.

W. Va. Code § 8-6-5(b) (emphasis added).

The Petitioners narrowly interpret the introductory phrase "[i]n addition to any other annexation configuration" to refer to the other statutory mechanisms of boundary

14

adjustment, *i.e.* annexation with election pursuant to W. Va. Code § 8-6-2 and the provisions for annexations without elections pursuant to W. Va. Code §§ 8-6-4 and 8-6-4a. In the Petitioners' view, a minor boundary adjustment can consist of only the two configurations including a street or highway. Additionally, it is argued that the term "minor," as used in the statute, must have some meaning and is restrictive or limited in nature.

The Respondents counter that the language of the minor boundary annexation statute is not limited to properties involving streets or highways. They contend the language of the statute is plain and unambiguous. Moreover, it is asserted, if the Legislature had intended to limit the minor boundary annexation process to streets and highways, it would not have included the phrase "[i]n addition to any other annexation configuration" as it would have been wholly unnecessary.

We note that in *Jenkins v. City of Oak Hill*, No. 16-0059, 2016 WL 6819052 (W. Va. Nov. 18, 2016) (memorandum decision), we affirmed the lower court's approval of an annexation by minor boundary adjustment in the setting of the City of Oak Hill, consisting of some 4.89 square miles, or 3,129 acres, annexing approximately 3.88 miles or some 2,484 acres including the entirety of a small town. This Court is mindful that the current statute establishes factors that must be considered by a county commission when acting on an application for a minor boundary adjustment, but provides no specific guidance as to what is deemed a minor boundary adjustment. *See In re the Petition of the City of Beckley to*

15

*Annex*, 194 W. Va. at 430, 460 S.E.2d at 676. It is well-settled that the determination as to geographic boundaries is essentially a legislative function into which the courts generally should not intrude unless the process is unconstitutional or invalid. *Id.* Had the Legislature intended to limit minor boundary adjustment to two configurations of territory with streets or highways it would have so stated or simply omitted the "[i]n addition to" language. *See State ex rel. Barrat v. Dalby*, 236 W. Va. 316, 319, 779 S.E.2d 584, 587 (2015) (recognizing that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there") (internal citations omitted)); *Martin v. Randolph Cty. Bd. of Educ.*, 195 W. Va. 297, 312, 465 S.E.2d 399, 414 (1995) ("'[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 252-54, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992))). With these principles in mind, we conclude that the introductory language "[i]n addition to any other annexation configuration" is not to be read narrowly. *See, e.g., State v. State Rd. Comm'n*, 100 W. Va. 531, 131 S.E. 7, 10 (1925) ("We therefore follow the current construction of the words 'in addition thereto' and hold that, as used in our statute, they are equivalent to 'also,' 'likewise,' 'besides,' etc.").

Upon our conclusion that the property meets the statutory criteria of property properly subject to annexation by minor boundary adjustment, we proceed to consider the Petitioners' next assignment of error regarding compliance with the requirements for such annexation petitions.

*D. The City of Summersville's Petition for Annexation Met the Requirements of West Virginia Code § 8-6-5(c)*

The Petitioners assign as error that the City's Petition for Annexation did not meet all the requirements of West Virginia Code § 8-6-5(c). The statute provides that to initiate annexation by minor boundary adjustment, a city must provide an application which includes certain specified items such as the number of businesses and residents in the area proposed for annexation; an accurate metes and bounds map of the area; a statement of the city's plan for providing public services such as police, fire, waste collection, water and sewer, and street maintenance; a statement of impact on private waste collection services or public service district services; a statement of impact on fire protection and fire insurance rates; a statement regarding how municipal finances and services will be affected; and a statement that the proposed annexation meets the requirements of the statute. W. Va. Code §§ 8-6-5(c)(1)-(7).

The Petitioners argue that the City's Petition did not meet the threshold requirements of the statute, and therefore, the Nicholas County Commission should not have proceeded to order publication of a notice, set a date and time for a public hearing, or proceed to evaluate the Petition. The Petitioners assert that the Petition falsely stated that no businesses were located in the territory to be annexed and that an accurate map was not included. Additionally, the Petitioners assert that the Notice published by the Nicholas

17

County Commission did not provide a detailed explanation of the alleged positive impact the proposed annexation would have on the City's finances.

In contrast, the Respondents assert that the Petition was in compliance with the statute, was not vague or misleading, the issue regarding an accurate map was not raised below, and the publication Notice was adequate.

We observe that the Petition identified the property to be annexed by setting out the particulars and details of the metes and bounds of the additional territory, and each metes and bounds description indicated that the description was as shown on an attached plat. Additionally, the Petition set forth the following statements:

> 3. The entire of the boundaries of the City of Summersville and the area to be annexed lie within the boundaries of Nicholas County, West Virginia.
>
> 4. There are no businesses located within the area proposed to be annexed.
>
> 5. There are no residents residing in the area proposed to be annexed.
>
> 6. The City of Summersville maintains a municipal police force which can adequately service the area to be annexed. Additionally, the Summersville Volunteer Fire Department currently serves the area to be annexed with fire protection.
>
> 7. The City of Summersville currently operates a water distribution system which upon application by the landowners may be extended into the area to be annexed.

18

8. There will be no impact by the annexation of the area described on any private solid waste collection service or public service district as currently there are no residences or businesses located within the area to be annexed.

9. As there are no businesses or residences currently within the proposed area for annexation, there will be no impact on fire insurance rates.

10. The proposed annexation will have a positive impact on the City's finances and services.

11. The area to be annexed is contiguous to the existing corporate limits of the City of Smmersville.

12. The proposed annexation meets all requirements of Chapter 8, Article 6, Section 5 of the *West Virginia Code*.


This Court considers that the statute plainly and unambiguously provides that when an application for annexation by minor boundary adjustment is made and meets the threshold requirements, "the county commission *shall* order publication of a notice of the proposed annexation to the corporate limits and of the date and time set by the commission for a hearing on the proposal." W. Va. Code § 8-6-5(e) (2001) (Repl. Vol. 2012) (emphasis added). Additionally, notices are to be posted at a minimum of five public places within the area proposed to be annexed. *Id.*


At the initial stage, prior to notice and hearing, pursuant to the mandate of the statute, a county commission is to determine solely whether the threshold statutory requirements for application have been met. Indeed, county commissions are permitted to

19

develop form applications. There are no requirements for how much detail is to be included in the application. The statute provides simply that the application must include certain "statements." Here, we find that a review of the Petition dictates the conclusion that the Petition met the statutory threshold statement requirements which compelled the Nicholas County Commission to proceed to notice, publication, and hearing. It is at the hearing phase of the process when consideration of the factors is taken into account in making a decision on annexation.

With respect to the issue of an accurate map, the record before us is not clear regarding whether a metes and bounds map was provided as an attachment to the Petition. However, the record includes a copy of the duly published Notice which precisely tracts the language of the Petition and includes a detailed metes and bounds plat. That plat did not originate out of thin air. We observe that there are no claims that there was inadequate identification of the area subject to annexation.

With respect to the claim that the Petition was fatally defective because it falsely stated that no businesses were located on the property proposed for annexation, there simply is no factual information presently before this Court allowing for a determination of the accuracy of the statement. The evidence reflects that the Nicholas County Commission approved Checks' permit on October 2, 2012, and that the DOH denied Checks' permit application on November 1, 2012. The record is silent as to what happened with respect to

20

the property until January 13, 2014, when the matter of annexation was presented to the Summersville City Council. The minutes of the City Council meeting indicate that individuals, including two of the Petitioners, spoke against annexation due to the *proposed* operation of a salvage yard. The minutes also indicate that Checks desired to obtain a permit to operate a salvage yard. The inference is that no salvage yard was in operation at the time. The Nicholas County Commission represents that at the time the Permit was filed by the City there were no businesses operating on the property. Our review of the record reveals that there is no evidence before us that Checks, or any other business, was operating on the property at the time the Petition was filed on March 20, 2014.[5] Moreover, we conclude that the accuracy of a single statement at the permit stage should not determine the fate of an annexation because the public hearing process affords the opportunity to test the accuracy of all the information, evaluate the statements and information, and make a determination whether the "annexation is in the best interest of the county as a whole." W. Va. Code § 8-6-5(f)(2).

As to the Petitioners' argument that the Notice did not contain adequate detail or explanation, this Court finds that the statute imposes the duty to afford the public notice of the proposed annexation and the date and time for a public hearing. Nothing in the

---

[5]At oral argument, counsel for the Nicholas County Commission represented that Checks is not operating a salvage yard on the property and that the property has not been zoned industrial. Counsel for the Petitioners indicated that they were unable to ascertain whether Checks was conducting operations on the property.

statutorily-defined process directs a county commission to provide detailed explanations regarding the statements of the municipality. Accordingly, we conclude that there are no statutory defects in the Notice.

Upon concluding that the Petition for Annexation met the threshold statutory requirements regarding information to be included, we now turn to a consideration of the Petitioners' assignments of error regarding the weighing of evidence and final determination on annexation by the Nicholas County Commission.

### E. A County Commission Must Consider Certain Factors Presented to it and Make a Determination Whether a Proposed Annexation is in the Best Interests of the County as a Whole When Making a Decision on Annexation by Minor Boundary Adjustment

We next consider, in tandem, the Petitioners' assignments of error that the Nicholas County Commission did not properly review and weigh the evidence and that the annexation is not in the best interests of Nicholas County. The Petitioners argue that the Nicholas County Commission failed to account for evidence regarding an asserted environmental impact of annexation and evidence of devalued property in surrounding homes and businesses. As to the best interests of the County, the Petitioners argue that the Nicholas County Commission wrongly focused on the notion that annexation would promote economic growth and failed to consider the negative impact of an automotive junkyard. The essence of the Respondents' counter-argument is that the Nicholas County Commission has

22

broad discretion as to its legislative-type functions and decisions with respect to geographic boundaries.

The Order on Boundary Adjustment entered by the Nicholas County Commission, set forth the following pertinent findings of fact:

> 3. That the affected parties of the territory to be annexed support the proposed annexation. The Commission finds the affected parties are:
>
>> A. Southern West Virginia Asphalt.
>>
>> B. Checks Auto Parts.
>>
>> . . . . .
>
> 6. No other municipality has made application to annex the property in the proposed annexation.
>
> 7. The proposed annexation is in the best interests of Nicholas County as a whole for the following reasons:
>
>> A. The proposed annexation will promote economic growth in Nicholas County.
>>
>> B. Future development will require the developer to address and contain the lead in the ground of the proposed property in a manner which meets environmentally safe standards.[6]
>>
>> C. Additional public services maintained by the City of Summersville will become

---

[6]It is not clear from the record whether the lead abatement issue relates to the prior usage of the property as a shooting range or to future operations issues.

available to the affected parties if the
property is annexed.

(Footnote added).

At their core, the Petitioners' arguments amount to disagreement with the findings and conclusions of the Nicholas County Commission. We decline to make new findings, particularly given the limited record before us. As this Court has observed: "[i]f we are to be faithful to the underlying concept that annexation is essentially a legislative matter that has been delegated to the commission, then the courts may not intrude unless the process is either unconstitutional or invalid." *In re the Petition of the City of Beckley*, 194 W. Va. 423, 430, 460 S.E.2d 669, 676. In the Order on Boundary Adjustment approving the Petition for annexation, the Nicholas County Commission serially addressed each and every statutory factor that it was mandated to consider in making its decision. While the Order on Boundary Adjustment does not go into great detail or lengthy analysis, it meets the minimum requirements of the statutory scheme. Accordingly, this Court, like the circuit court, will not substitute its judgment regarding the factors, the determination as to the best interests of the county as a whole, or the final decision of the County Commission.

Having determined that the findings and conclusions of the Nicholas County Commission regarding annexation will not be disturbed, we turn our focus to the assignment of error asserting that the annexation amounts to a public nuisance.

24

## F. Public Nuisance

The Petitioners additionally raise as an assignment of error the claim that the annexation constitutes a public nuisance. This assignment of error involves arguments regarding the applicability of statutes affording municipalities the ability to permit automobile junkyards on property zoned industrial within a municipality. W. Va. Code § 17-23-7 (1967) (Repl. Vol. 2013). The Petitioners assert that the annexation process was improperly used as a vehicle for bypassing the Nicholas County Commission permit process for the operation of a salvage yard. On the other hand, the Respondents assert, in part, that the arguments were not advanced below, and the annexation order did not authorize the operation of a junkyard.

A review of the record demonstrates that in Count V of their Amended Complaint the Petitioners asserted a claim that by allowing a circumvention of the law regarding automobile junkyards, the Nicholas County Commission authorized a public nuisance. In their memorandum of law supporting their motion for summary judgment, the Petitioners argued that Checks should be enjoined from operating a junkyard until it obtains a proper permit and that the operation of the junkyard is a public nuisance. We decline to visit this issue on the bare record before this Court. The Order of the circuit court does not explicitly address the public nuisance issue. Instead, the circuit court indicated there were questions of fact remaining as to the zoning of the property at issue and the applicability of statutory exceptions to licensing requirements for automobile junkyards given the interplay

25

of the statutes and the Nicholas County Ordinance. The issues regarding statutes and ordinances regulating junkyards are not before us. The public nuisance arguments advanced by the Petitioners are relevant to these factual issues and to legal issues that the trial court did not decide. The circuit court held such issues in abeyance pending further briefing, hearing, and proceedings. The record before this Court does not reflect the submissions or outcome of such factual and legal development.[7]

Inasmuch as we decline to address the issue of public nuisance, this Court proceeds to review the final assignment of error asserting the annexation amounts to an unconstitutional taking of property.

### G. Unconstitutional Taking of Property

Finally, the Petitioners assign as error that the annexation resulted in an unconstitutional taking of their property in violation of Article III, Section 9 of the West Virginia Constitution. It is argued by the Petitioners that the annexation decreases the value of their adjacent properties, prevents the economically viable use of their properties, and

---

[7]The Nicholas County Commission indicated that, subsequent to the entry of the trial court order, somebody "discovered" that the property had not been "formally" zoned industrial. Thus, inasmuch as the provisions of West Virginia Code § 17-23-4 (1967) (Repl. Vol. 2013), allowing for salvage yards located in industrial zoned areas of municipalities, does not apply, Checks agreed to cease operations as a salvage yard. As previously indicated, there is nothing in the record defining when and what operations were ever commenced by Checks on the property. The representation here is that there are no operations by Checks on the property.

impacts the health of their families. Again, the record on this issue, both factually and legally, is thread-bare. The argument is raised in cursory and skeletal fashion. Indeed, the Petitioners advance a few conclusory paragraphs which are not specifically linked with supporting relevant evidence to address a thorny and complex constitutional issue. Accordingly, we decline to address the matter. *See, e.g.*, *State Dep't of Health & Human Resources v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) ("'A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . .'" (citation omitted)).

## IV.

## CONCLUSION

Based upon the foregoing analysis, we affirm the judgment of the Circuit Court of Nicholas County, West Virginia, which affirmed the Nicholas County Commission's determination to approve the petition of the City of Summersville, West Virginia for an annexation by minor boundary adjustment and thereby granted the motion of the Nicholas County Commission for summary judgment.

Affirmed.

27