# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**The City of Charles Town, West Virginia
a municipal corporation,
Plaintiff Below, Petitioner**

**vs.) No. 19-0412 (Jefferson County 17-C-282)**

**The Jefferson County Commission,
Defendant Below, Respondent**

**FILED
October 14, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner The City of Charles Town ("the City"), by counsel Floyd McKinley Sayre, III, appeals the Circuit Court of Jefferson County's order, entered March 28, 2019, granting summary judgment in a declaratory judgment action in favor of respondent. Respondent The Jefferson County Commission ("the County Commission"), by counsel Nathan P. Cochran, filed a response.

After considering the parties' briefs, oral arguments, appendix record, and applicable law, this Court finds that because a decision involves application of the newly amended statute, West Virginia Code § 8-6-5 (2020),[1] and because neither the parties nor the circuit court has examined the 2020 version of this statute and its effect on the issues presented, this case satisfies the "limited circumstances" provision in Rule 21(d) of the Rules of Appellate Procedure for reversal and remand in a memorandum decision for consideration of West Virginia Code § 8-6-5 and its impact on this case.

The City is located within Jefferson County, West Virginia. In 2003, the City established an Urban Growth Boundary.[2] Thereafter, in 2010, the County Commission affirmed and adopted

---

[1] We use the date of the relevant statutes where necessary to denote the newly amended statutes as opposed to the prior versions of the statutes.

[2] An "Urban Growth Boundary" is defined in West Virginia Code § 8-6-4a(b)(2) (2020) as follows:

> a site-specific line, delineated on a zoning map or a written description in a zoning ordinance identifying an area around and outside the corporate limits of a municipality within which there is a sufficient supply of developable land within the boundary for at least a prospective 20-year period of municipal growth based on demographic forecasts and the time reasonably required to

1

the City's Urban Growth Boundary in a revision to its already-adopted zoning map.[3]

On March 30, 2017, the City presented an application to the County Commission seeking to annex 2,601.83 acres of land[4] into the City by a "minor boundary adjustment."[5] The entirety of this acreage is located within the Urban Growth Boundary.

By order entered on April 12, 2017, the County Commission denied the City's application to annex, finding that the City had failed to meet the threshold requirements of West Virginia Code § 8-6-4a(c)(2) (2009) and West Virginia Code § 8-6-5 (2001).[6] Specifically, the County Commission found that the City had failed to obtain the petition of the voters/freeholders within the area proposed to be annexed and to pass an ordinance based on such petition, thereby depriving the citizens of their due process rights and their right of self-determination. *See* W. Va. Code § 8-6-4 (setting forth the procedure for how property is annexed without an election). Additionally, the County Commission determined that the annexation of the proposed property was not "minor" within the meaning of West Virginia Code § 8-6-5 (2001) and West Virginia Code § 8-6-4a (2009). The City did not appeal the County Commission's denial of its application for annexation.

On November 22, 2017, the City filed a complaint for declaratory judgment in the Circuit Court of Jefferson County, asking the court to clarify the respective rights and responsibilities of the City and the County Commission under West Virginia Code § 8-6-4a (2001) and West Virginia Code § 8-6-5 (2009). The City averred that it had an absolute right to annex property within the approved Urban Growth Boundary by submitting an application for annexation, so long as the County Commission determines that the application meets the threshold requirements. *See* W. Va. Code § 8-6-5. Thereafter, the parties filed cross-motions for summary judgment.

On March 28, 2019, the circuit court, without a hearing, entered summary judgment in favor of the County Commission. The circuit court determined that, contrary to the City's position that it had "nearly unfettered authority" to annex property by a minor boundary adjustment within

---

effectively provide municipal services to the identified area. . . . The boundary shall be established by the county commission in agreement with each individual municipality regarding that municipality's boundary. . . .

[3] The County Commission reaffirmed the Urban Growth Boundary in 2014 as part of its comprehensive plan, which is shown on its 2015 Jefferson County zoning map.

[4] The territory sought to be annexed contains 922 properties with 2,174 residents and parts or all of 63 streets.

[5] *See* W. Va. Code § 8-6-4a (providing for "annexation by minor boundary adjustment by a municipality" where the proposed property to be annexed is "entirely within the municipality's designated urban growth boundary").

[6] West Virginia Code § 8-6-5 is discussed in greater detail *infra*.

an Urban Growth Boundary, "there must be a manifestation of agreement by the freeholders and voters of the territory to be annexed." It is from this order that the City appeals.[7]

A circuit court's entry of a declaratory judgment is reviewed *de novo*. Syl. Pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995).

On appeal, the City raises two assignments of error, arguing that the circuit court erred: 1) in finding that West Virginia Code § 8-6-4a(c)(2) gives the County Commission the ability to prevent the City from annexing property within its Urban Growth Boundary; and 2) by failing to rule that if the City filed a completed application for annexation, pursuant to W. Va. Code § 8-6-4a(c)(2), the County Commission is required, as a ministerial function, to approve that application. The County Commission counters that the citizens have a right to determine whether their property is annexed, and that its role in the annexation process is more than ministerial.

As a threshold matter, we note that municipalities may only annex property as provided by statute. *See Coffman v. Nicholas Cty. Comm'n*, 238 W. Va. 482, 487, 796 S.E.2d 591, 596 (2017) (discussing the available statutory annexation mechanisms). At issue in this case is the procedure a municipality must follow in order to annex property by a minor boundary adjustment within its Urban Growth Boundary. To resolve this issue, it is necessary to examine three statutes, West Virginia Code § 8-6-4a (2020), § 8-6-4 (2001) and § 8-6-5 (2020).

First, West Virginia Code § 8-6-4a (2020)[8] provides:

> If the proposed property to be annexed by minor boundary adjustment by a municipality is entirely within the municipality's designated urban growth boundary, then the municipality may annex without an election the proposed property pursuant to the provisions of § 8-6-4[9] of this code if the provisions of § 8-6-5 of this code are followed, except that agreement with the county commission is not required.

W. Va. Code § 8-6-4a(2) (footnote added).

Second, West Virginia Code § 8-6-4 (2001), is entitled "Annexation without an election." It provides the mechanism for a municipality to annex property when presented with a petition

[7]Because we reverse and remand this case for further proceedings, we decline to address the County Commission's two cross-assignments of error.

[8] The 2020 amendments to West Virginia Code § 8-6-4a are minor.

[9] West Virginia Code § 8-6-4 was not subject to any amendments in 2020.

either by "[a] majority of the qualified voters of the additional territory" or "a majority of all freeholders of the additional territory" seeking to have additional territory annexed. *Id*. When presented with such petition, a municipality may proceed to annex the "additional territory" by ordinance, "without ordering a vote on the question . . . ." *Id*.

It is the third statute, West Virginia Code § 8-6-5 (2020), which is critical to the resolution of this case. The parties and the circuit court analyzed the parties' rights and responsibilities, as well as the procedure to be followed, under the prior version of West Virginia Code § 8-6-5 (2001). This past legislative session, however, the Legislature undertook to clarify the roles and responsibilities of municipalities, county commissions, and individuals affected by a proposed annexation, by amending West Virginia Code § 8-6-5. The subject of the amendments is specifically expressed in the title of the bill that was adopted by the Legislature to enact such recent amendments:

> AN ACT to amend and reenact §8-6-4a and §8-6-5 of the Code of West Virginia, 1931, as amended, all relating to annexation by minor boundary adjustment; clarifying language regarding entry of order by county commission following annexation of property within urban growth boundary by minor boundary adjustment; requiring that municipality as part of application provide affidavit that persons, businesses, and freeholders in additional territory consent to inclusion in annexation; providing procedure when affected party is unavailable to provide affidavit; requiring county commission to enter order denying application for minor boundary adjustment annexation upon determination that annexation could be efficiently and cost effectively accomplished under other provisions of said code, that application lacks evidence of consent of all affected parties, or is otherwise insufficient; and prohibiting municipality from applying for annexation by minor boundary adjustment for two years after denial of application.

Enrolled Comm. Sub. S. B. 209, W. Va. 84th Leg., 2020 Reg. Sess.

The newly amended version of West Virginia Code § 8-6-5 became effective on February 20, 2020, and now provides, in relevant part:

> (a) In the event a municipality desires to increase its corporate limits by making a minor boundary adjustment, the governing body of the municipality may apply to the county commission of the county wherein the municipality or the major portion of the territory thereof, including the territory to be annexed, is located for permission to effect annexation by minor boundary adjustment. The municipality shall pay the costs of all proceedings before the commission.
> . . . .

4

(c) A county commission may develop a form application for annexation for minor boundary adjustment. An application for annexation by minor boundary adjustment shall include, but not be limited to:

. . . .

(2) *An affidavit of each business located in, each person residing in, and each freeholder of the additional territory stating that he, she, or it has consented to be included in the annexation, in such form as the county commission deems sufficient. In the event the municipality cannot obtain an affidavit from a business, resident, or freeholder within 90 days after sending the affidavit form and a letter explaining the purpose of the affidavit via certified mail, return receipt requested, to the best available address for the business, resident, or freeholder, such business, resident, or freeholder shall be deemed to have consented to the annexation*;

. . . .

(d) Upon receipt of a complete application for annexation by minor boundary adjustment, the county commission shall determine whether the application meets the threshold requirements for consideration as a minor boundary adjustment including whether the annexation could be efficiently and cost effectively accomplished under § 8-6-2 or § 8-6-4 of this code. *If the county commission determines that the annexation could be cost effectively and efficiently accomplished under § 8-6-2 or § 8-6-4 of this code, that the application lacks sufficient evidence that all affected parties of the additional territory consent to the annexation, or that the application otherwise fails to meet the threshold requirements for consideration as a minor boundary adjustment, it shall enter an order denying the application, which order shall include the reasons upon which it is based*.

(e) If the application meets the threshold requirements, the county commission shall order publication of a notice of the proposed annexation to the corporate limits and of the date and time set by the commission for a hearing on the proposal. Publication shall be as in the case of an order calling for an election, as set forth in § 8-6-2 of this code. A like notice shall be prominently posted at not less than five public places within the area proposed to be annexed.

(f) In making its final decision on an application for annexation by minor boundary adjustment, the county commission shall, at a minimum, consider the following factors:

(1) Whether the territory proposed for annexation is contiguous to the corporate limits of the municipality. For purposes

5

of this section, "contiguous" means that at the time the application for annexation is submitted, the territory proposed for annexation either abuts directly on the municipal boundary or is separated from the municipal boundary by an unincorporated street or highway, or street or highway right-of-way, a creek or river, or the right-of-way of a railroad or other public service corporation, or lands owned by the state or the federal government;

(2) Whether the proposed annexation is limited solely to a Division of Highways right-of-way or whether the Division of Highways holds title to the property in fee;

(3) Whether affected parties of the territory to be annexed oppose or support the proposed annexation. For purposes of this section, "affected parties" means freeholders, firms, corporations, and qualified voters in the territory proposed for annexation and in the municipality, and a freeholder whose property abuts a street or highway, as defined in § 17C-1-35 of this code, when: (i) The street or highway is being annexed to provide emergency services; or (ii) the annexation includes one or more freeholders at the end of the street or highway proposed for annexation;

(4) Whether the proposed annexation consists of a street or highway as defined in § 17C-1-35 of this code and one or more freeholders;

(5) Whether the proposed annexation consists of a street or highway as defined in § 17C-1-35 of this code which does not include a freeholder but which is necessary for the provision of emergency services in the territory being annexed;

(6) Whether another municipality has made application to annex the same or substantially the same territory; and

(7) Whether the proposed annexation is in the best interest of the county as a whole.

(g) If the county commission denies the application for annexation by minor boundary adjustment, the commission may allow the municipality to modify the proposed annexation to meet the commission[']s objections. The commission must order another public hearing if significant modifications are proposed.

(h) The final order of the commission shall include the reasons for the grant or denial of the application.

(i) The municipality applying for annexation or any affected party may appeal the commission's final order to the circuit court of the county in which the municipality or the major portion thereof, including the area proposed to be annexed, is located. The county commission may participate in any appeal taken from its order in the same manner and to the same extent as a party to the appeal. The order may be reviewed by the circuit court as an order of a county commission ordering an election may be reviewed under § 8-5-16 of this code.

6

> (j) *If the final order of the county commission is a denial of the application for annexation, the municipality may appeal as set forth in this section, but the municipality may not present the commission with another application for annexation relating to the same proposed change or any part thereof for a period of two years after issuance of the final order of the commission, unless such application is directed by the circuit court as the result of an appeal.*

W. Va. Code § 8-6-5 (emphasis added).[10]

In order for the parties to proceed in this matter, the 2020 amendments to West Virginia Code § 8-6-5 must be briefed and then considered in the first instance by the circuit court. Both the City and the County Commission agreed during oral argument that the 2020 amendments are controlling and, for that reason, we remand this case to the circuit court for further proceedings so that the parties and the circuit court have an opportunity to examine the issues raised in light of the newly amended statute.

For the foregoing reasons, we reverse and remand for further proceedings consistent with this memorandum decision.

Reversed and remanded with directions.

**ISSUED:** October 14, 2020

**CONCURRED IN BY:**
Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[10] The emphasized language is the new language that was amended into the statute.